1 | TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
2 | THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
3 | 11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
4 | Telephone: (310) 882-6407
Facsimile: (310) 882-6359
5 | E-Mail: tmccaffrey@tbmlaw.net
E-Mail: nchesler@tbmlaw.net
6 |
Attorneys for Plaintiff and Class Representative
7 | Scott Parker

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | SCOTT PARKER, on behalf of himself and those similarly situated, | CASE NO. CV13-02621-BRO (VBK)

13 |                                      Plaintiff, | **PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING**

14 |         vs. | **DEFENDANT DEAN TRANSPORTATION, INC.'S**

15 | DEAN TRANSPORTATION, INC., an Ohio Corporation; DEAN FOODS OF | **MOTION TO DISMISS COMPLAINT PURSUANT TO**

16 | SOUTHERN CALIFORNIA, LLC (dba HEARTLAND FARMS), a Delaware | **FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f);**

17 | Limited Liability Company; SBM DAIRIES, INC., a California |

18 | Corporation; and DOES 1 through 20, inclusive, | **MEMORANDUM OF POINTS AND AUTHORITIES**

19 |                                      Defendants. | Date:          June 20, 2013
Time:          1:30 p.m.
20 |                                      | Courtroom:     14

21

22

23

24

25

26

27

28

TO THE HONORABLE COURT AND DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff Scott Parker ("Plaintiff" or "Mr. Parker") is filing a First Amended Complaint ("FAC") (attached hereto as Exhibit A) on May 31, 2013, which as further explained in the attached memorandum of points and authorities moots defendants Dean Transportation, Inc.'s ("DTI's") and Dean Foods of Southern California, LLC's ("Dean Foods'") (collectively "Defendants'") motions to dismiss and/or strike.

While Plaintiff believes the additional factual allegations set forth in the FAC moot entirely Defendants' motions, in an abundance of caution, Plaintiff attaches a memorandum of points and authorities demonstrating why Defendants' arguments are legally unsound.


DATED: May 30, 2012

Respectfully submitted,

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.


By /s/ Natasha Chesler
   Natasha Chesler

   Attorneys for Plaintiff and
   Class Representative
   Scott Parker

# TABLE OF CONTENTS

**Page**

I.    THE FAAA DOES NOT PREEMPT PLAINTIFF'S CLAIMS ........................... 1

    A.    Defendant DTI Is Not Truly A "Motor Carrier" ................................ 1

    B.    The FAAA Does Not Preempt Basic Wage Laws As A Matter Of Law ........................................................................................................ 2

            1.    The Court should follow *Cardenas v. McLane Foodservices, Inc.* ............................................................................................... 3

            2.    The Majority Of Other Decisions Support Plaintiff ................. 5

II.    THERE ARE INSUFFICIENT FACTS WARRANTING DISMISSAL OF DEAN FOODS AS A PARTY AT THIS TIME ....................................... 8

III.    DEFENDANTS' REMAINING CHALLENGES TO THE PLEADING HAVE BEEN ADDRESSED ................................................................. 9

    A.    Group Pleading .................................................................................. 9

    B.    Alter-Ego Liability ........................................................................... 10

    C.    Plaintiff's Individual Claims ........................................................... 10

            1.    Seventh Cause of Action ............................................................ 10

            2.    Eight, Ninth, and Tenth Causes of Action ................................ 11

            3.    Eleventh Cause of Action ........................................................... 11

    D.    Plaintiff's PAGA Claims Have Been Appropriately Plead ................ 12

IV.    CONCLUSION ........................................................................................ 12

PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aguiar v. Cal. Sierra Express*, 2012 WL 1593202 (E.D. Cal., May 24, 2012)..............6

*Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997).......................................10

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ...........................................................5

*Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581 (N.D. Cal., April 18, 2013) ..........5

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152
    F.3d 1184 (9th Cir. 1998) ......................................................................1, 3, 4

*Campbell v. Vitran Express, Inc.*, 2012 WL 2317233 (C.D. Cal. June 8, 2012) ...........6

*Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011).....3, 4

*Cemex Wage Cases*, Case No. CJC-07-004520 (Cal. Sup. Ct., February 19,
    2010)............................................................................................................6

*Derochers v. Staples, Inc.*, 28 Mass L. Rep. 261 (Sup. Ct. Mass. 2010) ......................2

*Dilts v. Penske Logistics, LLC*, 819 F. Supp. 2d 1109 (S.D. Cal. 2011)....................6, 7

*Dunbar Armored, Inc. v. Rea*, Case No. 04-0602 (S.D. Cal., July 4, 2008) ..................6

*Esquivel v. Vistar Corp.*, 2012 U.S. Dist. LEXIS 26682 (C.D. Cal. Feb. 8, 2012).........6

*Federal Express Corp. v. California Pub. Utils. Comm'n*, 936 F.2d 1075
    (9th Cir. 1991).............................................................................................1

*Fitz-Gerald v. SkyWest, Inc.*, 155 Cal. App. 4th 411 (Cal. Ct. App. 2007)....................4

*Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir. 2000) ...................11

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (Cal. 2000) ................................................11

*Hansen v. Salinas Valley Ice Co.*, 62 Cal. App. 2d 357 (Cal. Ct. App. 1944) ...............2

*Iniguez v. Evergreen Aviation Ground Logistics Enter, Inc.*, Case No. CV-07-
    7181 AHM, *consolidated with Trujillo v. Evergreen Aviation Ground
    Logistics Enter, Inc.*, Case No. CV-07-7184 AHM (VBKx) (C.D. Cal.,
    Sept. 11, 2009)............................................................................................6

*Jasper v. C.R. England, Inc.*, 2012 WL 7051321 (C.D. Cal. Aug. 30, 2012)................7

*Kastanos v. Central Concrete Supply Co., et al.*, Case No. HG07-319366 (Cal.
    Sup. Ct., Sep. 11, 2009)...............................................................................6

*Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973 (N.D. Cal., Nov. 19, 2012)..........5, 7

PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING DEFENDANTS'
MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f)

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ...........................................4

*Morrison v. Knight Transportation, Inc.* Case No. 228016 (Cal. Sup. Ct., Sept. 29, 2009) ..................................................................................................................6

*Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243 (Cal. 2009) ...............................10

*Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158 (E.D. Cal. 2012)...........7

*Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008) ................3, 4, 5

*Stewart v. Rutgers*, 120 F.3d 426 (3d Cir. 1997) .........................................................11

*Village of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252 (1977).............10

*Williams v. Ruan Inc.*, Case No. 09-231235, (Cal. Sup. Ct. May 17, 2010) .................6

**STATUTES**

49 U.S.C. §§ 13102 ........................................................................................................2

49 U.S.C. §§ 13501 ........................................................................................................2

PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING DEFENDANTS'
MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f)

## MEMORANDUM OF POINTS AND AUTHORITIES

This is not a "second-bite" at the class certification apple as Defendants argue. The prior putative class action (*de la Cueva v. Alta-Dena*, Case No. CV 12-1804 (GHK) dealt with a different plaintiff (Miguel de la Cueva) and a different employer (Alta-Dena Certified Dairy, LLC). These two cases are unrelated as even defendants in this case readily admit: "this case does not overlap with the *de la Cueva* case because these cases involve different employers and drivers employed at different branches." (Def.'s Notice of Related Cases, Dkt. No. 5.) Furthermore, the merits of class certification were not reached in *de la Cueva*.

As explained more further below, Defendants' arguments are without merit or mooted by the First Amended Complaint ("FAC").

## I. THE FAAA DOES NOT PREEMPT PLAINTIFF'S CLAIMS

### A. Defendant DTI Is Not Truly A "Motor Carrier"

Congress enacted the Federal Aviation Administration Authorization Act (the "FAAA") as an identical provision to the preexisting Airline Deregulation Act ("ADA") in an effort to "even the playing field" between air and motor carriers. *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998), *citing* H.R. Conf. Rep. No. 103-677, at 87 (1994). The imbalance arose after *Federal Express Corp. v. California Pub. Utils. Comm'n*, 936 F.2d 1075, 1079 (9th Cir. 1991), wherein the Ninth Circuit found that Federal Express qualified as an "air carrier" under the ADA and, thus, state legislation regarding shipping activities were preempted. Thus, Congress sought to balance the regulatory inequality by also providing the same legislation for the trucking industry. *See Mendonca*, 152 F.3d at 1187.

But DTI is not in the industries Congress intended to regulate – airline or trucking industries. Co-Defendant Dean Foods manufactures and sells dairy products. (FAC at ¶ 3.) In approximately January 2011, Dean Foods transferred its drivers to DTI – its sister corporation – to handle the delivery of its own products. (Id.) Thus,

1   DTI handles deliveries for its sister corporation – it does not truly "sell" transportation

2   services.  (Id.)  DTI is not UPS or another trucking company that needs to level the

3   playing field with a company such as Federal Express.

4        Congress did not intend the FAAA to have such a sweeping effect.  Indeed, the

5   FAAA makes a distinction between "motor carriers" – those providing "transportation

6   for compensation" – and "private motor carriers" – those who own in some way the

7   property being transported for sale or to further a commercial enterprise.  49 U.S.C.

8   §§ 13102(14), (15).  And with respect to "private motor carriers" (those transporting

9   their own goods such as DTI), purely *intrastate* transportation – such as that at issue in

10  our case – are specifically *exempted* from the FAAA.  *See* 49 U.S.C. §§ 13102(15),

11  13501(1); *see also Hansen v. Salinas Valley Ice Co.*, 62 Cal. App. 2d 357, 361 (1944)

12  (former 49 U.S.C. § 303 has no relation to employer who carries goods from own

13  warehouse to other points within state for sale or distribution); *Derochers v. Staples,*

14  *Inc.*, 28 Mass L. Rep. 261, *2-8 (Sup. Ct. Mass. 2010) (rejecting argument that the

15  FAAA preempted state wage laws with respect to Staples' package delivery drivers

16  because Staples was being challenged in its role as "employer" and not as to "the

17  tangential delivery of its goods").

18       Thus, the plain language of the FAAA demonstrates Congress did not intend it

19  to apply to a company such as DTI delivering its own dairy product (as opposed to

20  selling transportation services or delivering someone else's product).  A question of

21  fact remains as to whether DTI falls within the private motor carrier of the FAAA.[1]

22  **B.**     **The FAAA Does Not Preempt Basic Wage Laws As A Matter Of Law**

23       Even if DTI is somehow deemed a true "motor carrier", the FAAA still does not

---

[1] DTI's sister-company Alta-Dena made a similar preemption argument in the *de la Cueva* matter, which Chief Judge King rejected at the pleading stage, noting it could be asserted by summary judgment, after discovery regarding defendant's status under the FAAA.  (Case No. CV 12-01804 (GHK), Dkt. No. 20.)

1  warrant dismissal at this stage.  As a threshold matter, DTI moves to dismiss "the meal
2  and rest break claims" without specifying any cause of action, claiming that the FAAA
3  calls for dismissal of the entire complaint.  But DTI ignores that Plaintiff does not
4  allege merely a failure to provide meal/rest breaks – but also that DTI deducts 30
5  minutes of wages from employees regardless of whether a meal break was taken.
6  (FAC at ¶ 16.)  Thus, Plaintiff alleges causes of action for failure to pay all wages due
7  upon termination (2nd cause of action), failure to pay all wages earned (3rd cause of
8  action), and failure to pay at least minimum wage and/or overtime wages (4th cause of
9  action).  Such claims are clearly "wage" clams the 9th Circuit has held are <u>not</u>
10  <u>preempted</u> by the FAAA as a matter of law.  *Mendonca*, 152 F.3d at 1188.

11       Nor is the FAAA as broad as DTI advocates.  The Supreme Court addressed the
12  FAAA's preemptive reach in *Rowe v. New Hampshire Motor Transport Ass'n*, 552
13  U.S. 364 (2008).  In that case, the Court decided whether Maine's requirement that
14  tobacco shippers use a trucking service that verified the legal age of the buyer was
15  preempted by the FAAA.  This obviously had nothing at all to do with state law
16  regarding employee wages.  While the High Court found that the FAAA preempted
17  Maine's law because it had a "significant and adverse impact" regarding the FAAA's
18  pre-emption related objectives, the Court specifically noted that "federal law does not
19  pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or
20  peripheral a manner.'"  *Id*. at 371-72, 375.

21       **1.  The Court should follow *Cardenas v. McLane Foodservices, Inc.***
22       Regarding the preemption of California meal/rest break laws, following *Rowe*,
23  United States District Court Judge David O. Carter denied a motion for summary
24  judgment on facts similar to ours in a published opinion.  In *Cardenas v. McLane*
25  *Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1256 (C.D. Cal. 2011) – <u>which DTI fails to</u>
26  <u>cite</u> – the Court denied defendant's motion for summary judgment and <u>rejected the</u>
27  <u>argument that the FAAA preempts California's meal and rest break statute as a matter</u>
28  <u>of law</u>.  The court looked to *Mendocna*, in which the Ninth Circuit affirmed a holding

1   that the FAAA did not preempt California prevailing wage laws because "[t]he

2   language and structure of the FAAAA Act does not evidence a clear and manifest

3   intent on the part of Congress to preempt the [California prevailing wage law]" and the

4   wage laws in question had "no more than an *indirect, remote, and tenuous* effect on

5   motor carriers." *Mendonca,* 152 F.3d at 1185-90.[2]

6      *Cardenas* further noted a California Court of Appeal decision holding that the

7   ADA did not preempt California's meal and rest break laws even with evidence that

8   the state law affected operations. *Id.,* citing *Fitz-Gerald v. SkyWest, Inc.,* 155 Cal.

9   App. 4th 411, 423 (2007).[3]  Indeed, as the *Fitz-Gerald* court explained, "Although the

10  ADA has been broadly interpreted as preempting state 'enforcement actions having a

11  connection with, or reference to, airline 'rates, routes, or services,' it has its limits.  If

12  the rule was otherwise, any string of contingencies is sufficient to establish a

13  connection with price, route or service, [and] there will be no end to ADA

14  preemption.'" *Fitz-Gerald,* 155 Cal. App. 4th at 423 (internal citations omitted).

15     In light of the foregoing, the *Cardenas* court found that California's rest and

16  meal break laws are <u>not preempted under the FAAA as a matter of law</u>. *Cardenas,* 796

17  F. Supp. 2d at 1256.  Ultimately, the *Cardenas* court found a genuine issue of material

18  fact as to whether compliance with California's rest and meal break laws impacts

19  defendant's services and to what extent so as to qualify for preemption. *Id.*

20     This case is no different.  DTI has presented *no actual evidence* (or identified

21  any allegations in the complaint) demonstrating that providing meal/rest breaks to its

22  drivers would cause it "significant impact" related to Congress' objectives regarding a

23  ——————————————

24  [2] *Cardenas* further noted that while *Mendocna* may pre-date *Rowe,* both decisions
    nevertheless rely on the Supreme Court's preemption standard described in *Morales v.*
25  *Trans World Airlines, Inc.,* 504 U.S. 374 (1992) (discussing preemption under ADA) –
    namely, that some state laws may have too tenuous, remote or peripheral impact to be
26  preempted. *Cardenas,* 152 F. 3d at 1255.
    [3] Because of the similarity in the provisions, courts often interpret the statutes in light
27  of analysis of the other. *See, e.g., Rowe,* 552 U.S. at 370.

28

1   motor carrier's rates, routes and services. *See Rowe*, 552 U.S. at 371.  Indeed, Plaintiff
2   strongly suspects that DTI may likely argue in the future that it does indeed make such
3   breaks available to its drivers and, thus, is able to do so without hardship.  Notably, as
4   further explained in Plaintiff's FAC, DTI in fact purports to provide drivers with a
5   meal/rest break policy allegedly requiring them to take such breaks.  (FAC at ¶ 14.)

6          DTI attempts to seize on an allegation in Plaintiff's complaint that routes were
7   not adjusted to provide employees with meal breaks.  But nowhere in the complaint
8   does it allege that providing meal/rest breaks would have a "significant impact" on the
9   routes.  Nowhere does it say how long deliveries would be delayed if meal breaks were
10  taken – or for that matter, why DTI couldn't just pay the extra hour of premium pay if
11  the break was not allowed.  Indeed, the complaint must be construed in the light most
12  favorable to the Plaintiff, with all material allegations and reasonable inferences drawn
13  therefrom accepted as true. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).[4]

14              2.     **The Majority Of Other Decisions Support Plaintiff**

15         Most recently, in *Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581, at *3
16  (N.D. Cal., April 18, 2013), the court found that California's meal and rest break laws
17  are <u>not</u> preempted by the FAAA because such laws apply to all employers in
18  California and do not aim directly at the carriage of goods.  The court further noted
19  that given the flexibility of California's meal and rest break provisions (including the
20  possibility of on-duty meal periods where practical considerations render providing a
21  meal period infeasible), such laws are unlikely to "bind" motor carriers to particular
22  rates, routes, or services. *Id.* at *5-6.  And the court in *Mendez v. R+L Carriers, Inc.*,
23  2012 WL 5868973, at *6-7 (N.D. Cal., Nov. 19, 2012) also reached the same result

24

25  [4] Notably, in *Mendonca* the court even rejected defendant's evidence that California's
    prevailing wage laws increased their prices by 25% and caused them to adjust their
26  routes as having "no more than indirect, remote, and tenuous" effects on defendant's
    prices, routes, and services." *Mendonca*, 152 F.3d at 1189.  Likewise, authorizing an
27  employee meal/rest break or paying a one hour premium on the days it cannot be done
    has at best an indirect, remote, and tenuous effect on DTI's prices, routes, or services.

28

1  noting that California law offers motor carriers "significantly more flexibility than
2  Defendants and other courts have recognized."

3       The majority of other unpublished cases similarly support Plaintiff's position.
4  *See, e.g., Iniguez v. Evergreen Aviation Ground Logistics Enter, Inc.*, Case No. CV-07-
5  7181 AHM, *consolidated with Trujillo v. Evergreen Aviation Ground Logistics Enter,*
6  *Inc.*, Case No. CV-07-7184 AHM (VBKx) (C.D. Cal., Sept. 11, 2009); *Kastanos v.*
7  *Central Concrete Supply Co., et al.*, Case No. HG07-319366 (Cal. Sup. Ct., Sep. 11,
8  2009); *Cemex Wage Cases*, Case No. CJC-07-004520 (Cal. Sup. Sup. Ct., February 19,
9  2010); *Morrison v. Knight Transportation, Inc.* Case No. 228016 (Cal. Sup. Ct., Sept.
10  29, 2009); *Williams v. Ruan Inc.*, Case No. 09-231235, (Cal. Sup. Ct. May 17, 2010);
11  *see also Dunbar Armored, Inc. v. Rea*, Case No. 04-0602 (S.D. Cal., July 4, 2008)
12  (denying declaratory relief finding preemption noting that requiring armored car
13  service to change routes and shift lengths to provide meal/rest breaks "does not acutely
14  interfere with the forces of competition between air and motor carriers, which was
15  Congress's focus in enacting the [FAAA]").[5]

16       While DTI cites to a small handful of cases finding preemption of California's
17  meal and rest break statutes under the FAAA or ADA, these cases are unpublished and
18  non-binding, and in any event, are easily distinguishable.  For example, *Esquivel v.*
19  *Vistar Corp.* provides scant factual information, less legal analysis, and does not even
20  explain what defendant's business was, other than stating the employees at issue were
21  route delivery drivers.  2012 U.S. Dist. LEXIS 26686 at *1 (C.D. Cal., Feb. 8, 2012).
22  Similarly, *Aguiar v. Cal. Sierra Express* and *Campbell v. Vitran Express, Inc.* provide
23  virtually no legal analysis, and little information regarding defendants' businesses.
24  2012 WL 1593202 (E.D. Cal., May 4, 2012); 2012 WL 2317233 (C.D. Cal. June 8,
25  2012). And in *Dilts v. Penske Logistics, LLC*, defendant operated a warehouse,

26  _____

27  [5] These orders are attached to the Chesler Declaration filed concurrently herewith.

28

1  distribution and inventory management service, specifically, storing, delivering, and
2  installing their client's products (such as Whirlpool), thus falling far more into the
3  "motor carrier" envisioned by Congress (*i.e.,* providing transportation services as its
4  essential business).  819 F. Supp. 2d 1109, 1111-12 (S.D. Cal. 2011).  <u>Notably, all of</u>
5  <u>these cases DTI relies upon were criticized in *Mendez* for failing to analyze the full</u>
6  <u>flexibility California meal/rest break laws offer employers.</u>  2012 WL 5868973 at *6.[6]

7          Nor does *Jasper v. C.R. England, Inc.*, 2012 WL 7051321 (C.D. Cal. Aug. 30,
8  2012) help DTI here.  In *Jasper*, defendant was truly a trucking company providing
9  transportation services across the United States and, thus, the question of whether the
10 defendant qualified under the FAAA was not at issue.  Moreover, the defendant
11 affirmatively established that providing for meal and rest breaks would affect its
12 services by causing longer drive times, less service, etc.  *Id*. at *6.  Here, on the other
13 hand, DTI has not established that providing meal and rest breaks is not feasible, or
14 what other "significant" impact it would have upon its business.  Instead, Plaintiff
15 alleges that such breaks can be provided with little impact and that DTI even purports
16 to have a meal/rest break policy applicable to its drivers.

17         Thus, DTI's preemption argument cannot stand – especially at this early stage of
18 the litigation.  *See, e.g., Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158,
19 1166 (E.D. Cal. 2012) (finding additional arguments and evidence necessary in order
20 to determine whether effects of meal/rest laws were more than tenuous on defendant's
21 prices, routes, and services).

22
23
24
_____

25 [6] Plaintiff further notes that both *Dilts* and *Campbell* are pending appeal in the 9th
26 Circuit (Case Nos. 12-55705 and 12-56250, respectively), although Plaintiff does not
   believe those decisions are directly applicable to this case given Plaintiff's challenge to
27 DTI's status as a true "motor carrier."
28

## II.   THERE ARE INSUFFICIENT FACTS WARRANTING DISMISSAL OF DEAN FOODS AS A PARTY AT THIS TIME

Dean Foods' claim that Plaintiff knew it was no longer a viable legal entity when he filed the instant action is shameful.  As previously noted, there is currently another case pending in the Central District on behalf of a different plaintiff against Dean Foods' sister corporation, Alta-Dena Certified Dairy, LLC.  (*de la Cueva v. Alta-Dena Certified Dairy, LLC*, Case No. CV 12-01804 GHK (CWx).  The plaintiff in that case sought class certification, which was ultimately denied solely based on his adequacy as a class representative.  (Id., Dkt. No. 61.)  Counsel for both plaintiff and defendant in that case are the same counsel in this case.  (Declaration of Natasha Chesler ("Chesler Decl.") ¶ 3.)

Prior to moving for class certification in the *de la Cueva* matter, the plaintiff in that case sought to add Dean Foods (the defendant in this case) as an additional defendant.  Alta-Dena strenuously opposed that effort and **on February 6, 2013** represented to the Court: "Dean Foods of Southern California, LLC…*never merged with or into Alta-Dena, and is still an active legal entity in its own right in California*." (Id., Dkt. No. 43 at p. 16, <u>emphasis in original</u>.)  The Court then denied Mr. de la Cueva's request to add Dean Foods to the *de la Cueva* matter.[7]

On February 25, 2013, Plaintiff's counsel checked Dean Foods' corporate status on the California Secretary of State's website, which confirmed that it was still an "active" legal entity at that time.  (Chesler Decl. ¶ 5, Ex. C.)  Thus, based on defense counsel's express representation, confirmed by the California Secretary of State website, on February 28, 2013, Plaintiff filed the instant action and named his former employer Dean Foods as a defendant.  And on March 15, 2013, Dean Foods was

---

[7] After this case was filed and Plaintiff's counsel brought the representation to defense counsel's attention, Defendant's counsel claimed this was allegedly a mistake and filed a notice of errata.  (Case No. CV 12-01804 GHK, Dkt. No. 56.)

1    properly served with the summons and complaint, as defendants admit. (Dkt. No. 1
2    ¶ 4.) Yet now Dean Foods – in contradiction of its earlier representations – claims it is
3    no longer an active legal entity and that instead Alta-Dena is the proper party. But
4    Defendant's motion only shows a certificate of merger. <u>Defendant has failed to</u>
5    <u>provide the actual merger agreement</u>. Further compounding the matter, Defendant has
6    also represented to Plaintiff and the Court that on January 1, 2011, all of Dean Foods'
7    drivers were transferred to another sister corporation, co-defendant DTI. Obviously,
8    Plaintiff wants to name the proper party. Defendant has just made it unnecessarily
9    complicated in doing so with its contradictory statements and inadequate record.
10   Accordingly, on May 29, 2013, Plaintiff's counsel asked Defendant's counsel for the
11   actual merger agreement and documents related to the transfer of Dean Foods' drivers
12   to Dean Transportation, Inc. (Chesler Decl. at ¶ 6.) Defendant has not yet responded
13   to this request. (Id.)
14           Given the foregoing, Plaintiff has named Alta-Dena in the FAC as an additional
15   named defendant responsible for Dean Foods' pre-merger liabilities based on
16   Defendant's representations in its motion. Plaintiff, however, has not yet dismissed
17   Dean Foods. Once Plaintiff has actual documentary evidence of whether and/or when
18   a merger took place (which the Certificate of Merger does not conclusively prove
19   without the referenced Merger Agreement) and there is no question as to which entity
20   is the proper party for liability resulting from Dean Foods' conduct, Plaintiff will either
21   dismiss, add, or substitute in the proper party.

22   **III.   <u>DEFENDANTS' REMAINING CHALLENGES TO THE PLEADING</u>**
23   **<u>HAVE BEEN ADDRESSED</u>**
24           Notably, Defendant takes issue with Plaintiff's pleading under the federal
25   standards, without taking into account that this case was originally filed in state court
26   before Defendant removed it to Federal Court. Plaintiff does not believe that
27   Defendant's alleged pleading issues rise to a level warranting dismissal, but again has
28   addressed these items in the FAC to assuage Defendant's concerns.

## A.    <u>Group Pleading</u>

Plaintiff submits that his original complaint did not impermissibly group defendants in such a way that it was unclear which defendant was charged with what conduct.  Instead, Plaintiff alleges that all three of his employers had the same unlawful policies and procedures and thus, were all liable for the wage and hour claims.  In any event, to remove any doubt Defendants claims to have, Plaintiff has explained this even further in the FAC.  (See FAC at ¶¶ 3, 13-16.)

## B.    <u>Alter-Ego Liability</u>

None of the claims asserted in this case are premised on alter-ego liability. Plaintiff has specifically alleged that all three defendants were his direct employer at various points.  (FAC at ¶ 3.)  Plaintiff has deleted the boiler-plate alter-ego allegation from the FAC to address Defendants' alleged concerns.

## C.    <u>Plaintiff's Individual Claims</u>

### 1.    <u>Seventh Cause of Action</u>

Plaintiff's first individual claim for disability discrimination has been properly plead.  While Plaintiff pleads that Defendant allegedly terminated him for taking breaks – he explains that Defendant terminated him "while he was still on his leave of absence for false and/or trivial reasons, which were merely pretextual." (Complaint at ¶ 62; FAC at ¶ 61.)  Plaintiff further explains that Defendant did not "follow its progressive discipline policy – or even conduct a fair, impartial, adequate, and thorough investigation."  (Id.)  And Plaintiff continues that "[a]fter many years of dedicated service, Defendant only terminated Plaintiff once he became disabled."  (Id.) Such factual claims, if true, are sufficient from which a jury can find discrimination. *See, i.e., Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 277-80 (Cal. 2009) (employer's faulty and unbiased investigatory process can evidence pretext); *Village of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role"); *Azzaro v. County of Allegheny*, 110 F.3d 968, 974-975

PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING DEFENDANTS'
MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f)

CV13-02621-BRO (VBK)

(3d Cir. 1997) (failure to follow policies applicable to employee suggests that discrimination may be involved); *Stewart v. Rutgers*, 120 F.3d 426, 430 (3d Cir. 1997) ("arbitrary and capricious" decision-making, coupled with "procedural errors," constitutes circumstantial evidence of discrimination).[8]

## 2. **Eight, Ninth, and Tenth Causes of Action**

DTI claims that Plaintiff musty identify a "specific, available reasonable accommodation" that the employer could have provided but did not. (Def. Motion at 18.) Plaintiff has alleged that he was fired while he was on disability leave and, thus, DTI did not ultimately grant him the accommodation he requested. (Complaint at ¶ 69, FAC at ¶ 68.) And if DTI is still not satisfied, Plaintiff has clarified in the FAC that DTI did not explore other alternatives, such as an office/desk job and/or part time work. (FAC at ¶ 68.)

DTI also tries to avoid liability on the disability accommodation claims by characterizing Plaintiff's leave as "indefinite." (Def. Motion at 19.) But Plaintiff has also clarified in his FAC that this was not an indefinite leave. (FAC at ¶ 68.) Moreover, courts have found leaves of absences to be reasonable in time periods far exceeding six months. *See, i.e., Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 (1st Cir. 2000) (leave of absence of one year or more can be reasonable).

## 3. **Eleventh Cause of Action**

Even though Plaintiff believes his eleventh cause of action for intentional infliction of emotional distress was properly plead and viable, in the interest of streamlining the litigation, Plaintiff has withdrawn this claim in his FAC as it is covered by his other causes of action.

---

[8] Because state and federal employment discrimination laws are similar, California courts look to pertinent federal precedent in applying California statutes. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000).

**D.    Plaintiff's PAGA Claims Have Been Appropriately Plead**

Plaintiff has amended the complaint to make clear that the LWDA has not notified Plaintiff of an intent to investigate the alleged violations and has attached the letters sent to the LWDA as an exhibit.  (FAC at ¶ 18 , Ex. A.)

## IV.    CONCLUSION

Thus, for the foregoing reasons, plaintiff Scott Parker respectfully requests that the Court refuse to hear defendants Dean Transportation, Inc. and Dean Foods of Southern California, LLC's motions to dismiss and/or strike on the grounds that they are moot in light of the First Amended Complaint and/or deny Defendants' motions in their entirety.

DATED: May 30, 2012

Respectfully submitted,

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.


By /s/ Natasha Chesler
      Natasha Chesler

      Attorneys for Plaintiff and
      Class Representative
      Scott Parker

PLAINTIFF'S OMNIBUS NOTICE OF FILING OF FIRST AMENDED COMPLAINT MOOTING DEFENDANTS'
MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) OR TO STRIKE PURSUANT TO FRCP 12(f)

.

**Exhibit A**

TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California  90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359

Attorneys for Plaintiff and Class Representative
Scott Parker

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SCOTT PARKER, on behalf of himself
and those similarly situated,

            Plaintiff,

   vs.

DEAN TRANSPORTATION, INC., an
Ohio Corporation; DEAN FOODS OF
SOUTHERN CALIFORNIA, LLC (dba
HEARTLAND FARMS), a Delaware
Limited Liability Company; SBM
DAIRIES, INC., a California
Corporation; ALTA-DENA CERTIFIED
DIARY, LLC, a Delaware Limited
Liability Company, and DOES 1 through
10, inclusive,

           Defendants.

CASE NO. CV13-02621-BRO (VBK)

**CLASS ACTION**

**JURY TRIAL REQUESTED**

**FIRST AMENDED COMPLAINT FOR:**

**CLASS CLAIMS**

**ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED:**

**1)  FAILURE TO PROVIDE MEAL AND/OR REST BREAKS IN VIOLATION OF CAL. LABOR CODE §§ 226.7, 512;**

**2) FAILURE TO PAY ALL WAGES DUE UPON TERMINATION OF EMPLOYMENT IN VIOLATION OF CAL. LABOR CODE §§ 201-204;**

**3) FAILURE TO PAY ALL WAGES EARNED IN VIOLATION OF CALIFORNIA LABOR CODE §§ 221-224;**

**4) FAILURE TO PAY MINIMUM WAGE AND/OR OVERTIME IN VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 511, 1182.12 & 1194;**

COMPLAINT

**5) FAILURE TO PROVIDE ACCURATE PAYSTUB IN VIOLATION OF CAL. LABOR CODE § 226; and**

**6) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ*.;**

**<u>INDIVIDUAL CLAIMS</u>**

**7) DISABILITY DISCRIMINATION IN VIOLATION OF CAL. GOV'T CODE §§ 12900 ET SEQ. ("FEHA");**

**8) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**

**9) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA; AND**

**10) WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY.**

**DEMAND FOR JURY TRIAL.**

Plaintiff Scott Parker ("Plaintiff" or "Mr. Parker") hereby brings this complaint against the above-named defendants and states and alleges as follows:

<u>**General Allegations**</u>

1.     Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein:  (a) defendant SBM Dairies, Inc. is and was a California Corporation with its principal place of business in Los Angeles County, California (and was previously known as Santee Dairies) ("Santee Dairies"); (b) defendant Dean Foods of Southern California, LLC is and was a Delaware Limited Liability Company, which used the assumed name "Heartland Farms" ("Dean Foods") with its principal

1

1   place of business in Los Angeles County, California; and (c) defendant Dean

2   Transportation, Inc. ("DTI") is and was an Ohio corporation with its principal place of

3   business in Dallas, Texas.  Plaintiff is informed and believes and thereupon alleges that

4   at all times mentioned herein defendant Alta-Dena Certified Dairy, LLC ("Alta-Dena")

5   is and was a Delaware Limited Liability Company with its principal place of business

6   in Los Angeles County, California.  Defendant Dean Foods has represented to Plaintiff

7   that effective January 1, 2013, Dean Foods merged with and into Alta-Dena with Alta-

8   Dena as the sole surviving entity.  At the time Plaintiff filed the initial complaint in this

9   action (on February 28, 2013), however, Dean Foods was still listed with the

10  California Secretary of State as an "active" limited liability company.  Accordingly,

11  Plaintiff names Alta-Dena herein solely on the basis of Dean Foods' representations to

12  date.  The allegations of conduct, however, are attributable to the pre-merger Dean

13  Foods entity and, thus, Alta-Dena is named herein solely to the extent it may have

14  liability for Dean Foods' pre-merger conduct.  Plaintiff has requested evidence

15  confirming the transfer of liabilities for this case from Dean Foods to Alta-Dena and

16  will further add, remove, and/or substitute parties once such evidence is produced.

17          2.      At all times mentioned herein, and at the time the causes of action arose,

18  Mr. Parker was an individual and citizen of the County of San Bernardino, State of

19  California, and at all relevant times was employed by Defendants in the County of Los

20  Angeles.  The acts giving rise to Mr. Parker's claims occurred in the County of Los

21  Angeles.

22          3.      From approximately at least February 2009 through October 2009, Mr.

23  Parker was employed by Santee Dairies.  From approximately October 2009 through

24  December 31, 2010, Mr. Parker was employed by Dean Foods, which manufactured

25  and sold dairy products.  In approximately January 1, 2011, Dean Foods transferred all

26  drivers to its sister corporation, DTI.  Thus, from January 1, 2011 through March 2012,

27  Mr. Parker was employed by DTI.  Mr. Parker's job duties were the same for each of

28  these employers – delivering his employer's products to either the employer's

customers or another of his employer's locations in Southern California.  Mr. Parker is informed and believes that all of Defendants' drivers had the same duties – delivering Defendants' products within the state of California.  Dean Foods and DTI are sister companies.  While the corporate entity employing Plaintiff changed, Plaintiff's duties did not.  He still continued to deliver Dean Foods' products to its customers and/or other locations in Southern California.  Mr. Parker did not provide transportation services for any other companies (*i.e.* deliver unrelated companies' products and/or transportation for compensation).

4.      Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive, and for that reason sues said Defendants by such fictitious names.  Plaintiff will file and serve an amendment to this complaint alleging the true names and capacities of said fictitiously named Defendants if and when such true names and capacities become known to Plaintiff.

5.      Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for, and proximately caused, the harm and damages alleged herein below.

6.      Hereinafter in the complaint, unless otherwise specified, reference to "Defendants" shall refer to defendants Santee Dairies, Dean Foods, DTI, and each of them.

## CLASS ALLEGATIONS

7.      The class for whose benefit this action is being prosecuted is defined as follows: *All persons who were employed by defendants Santee Dairies, Dean Foods, and DTI as a "Driver"(including, but not limited to Delivery Driver, Route Driver, Relay/Shuttle Driver, Wholesale Driver, Shipping Driver, etc.) in California from February 2009 to the present (the "putative class")*.  Plaintiff reserves the right to create sub-classes if necessary.

8.      All members of the putative class have had their rights under the California Labor Code violated by Defendants' wage and hour/labor practices and

1   have suffered injury as the result of Defendants' conduct as described further herein.

2       9.      The putative class members as described herein above, are ascertainable.

3   Members of the class, estimated to be approximately at least 300 in number, can be

4   readily identified from personnel files, payroll records, computer databases or other

5   records maintained by Defendants.

6       10.     The litigation of the questions of fact and law involved in this action will

7   resolve the rights of all putative class members and hence will have a binding effect on

8   all class members.

9       11.     The class is sufficiently numerous, and joinder of separate claims brought

10  by each and every class member is impracticable, due to both a reluctance of certain

11  class members to join in a lawsuit that could impose costs on their current or former

12  employer and the high cost of separate, individual litigation in comparison to the

13  amount of monetary recovery for individual class members.

14      12.     The putative class has a well-defined community of interest in the

15  questions of fact and law to be litigated.  The common questions of law and fact

16  predominate with respect to the liability issues, relief issues and anticipated affirmative

17  defenses.

18      13.     The claims of the named plaintiff is typical of those for all putative class

19  members.  Plaintiff is informed and believes that Defendants had a corporate policy

20  and/or practice that did not authorize or permit "drivers" (such as Plaintiff) to take

21  meal and/or rest breaks.  Defendants engaged in several acts resulting in the failure to

22  authorize or permit drivers to take meal/rest breaks, including, but not limited to:

23  (a) requiring drivers remain with their truck at all times and/or remain within a one-

24  half to one-mile radius of the route Defendants assigned, thereby failing to relieve

25  drivers from all duties during break periods; (b) requiring drivers to wait until all

26  deliveries were completed before taking a meal break, which often resulted in drivers'

27  having to wait until after the beginning of the sixth hour of work before taking a meal

28  break; (c) assigning drivers routes without any allocation for meal/break periods, or

assigned times, in such a manner that it was often impracticable for drivers to take meal/rest breaks – if at all – prior to the beginning of the sixth hour worked; and (d) failing to authorize and/or permit a second meal period when drivers worked in excess of ten hours.  Thus, from at least 2009, Plaintiff and the putative class members were not authorized or permitted to take a meal and/or rest break, and – in turn – received less than what was due to them on the next pay check (and/or at the termination of employment).  Thus, Defendants did not allow Plaintiff or any putative class member a duty free meal period and/or rest period as required by the California Labor Code and the applicable Industrial Welfare Commission Wage Orders.  Plaintiff is informed and believe these policies and/or practices continued from at least 2009 to Mr. Parkers' termination in approximately March 2012.  Plaintiff is further informed and believe that this practice applied to all of Defendants' drivers.  All of these practices were consistent throughout Plaintiff's employment with Santee Dairies, Dean Foods, and DTI.  In other words, while Plaintiff's employer changed, the policies and practices did not.

14.   Defendants could have provided its drivers with meal and rest breaks but chose not to.  Plaintiff is informed and believes Defendants could have provided such meal and rest breaks without significant impact on its rates, routes, and/or services.  Indeed, Defendants purported to have meal and rest break policies requiring such breaks (although Plaintiff also contends they were so poorly drafted so as to fail to truly inform drivers' of their rights or to otherwise authorize and permit a duty free meal period).  But despite these meal and rest break policies, Defendants then effectively prevented, discouraged, and/or dissuaded its drivers from actually taking such breaks (and especially with regard to meal and break timing requirements).

15.   Furthermore, Plaintiff is informed and believes and thereupon alleges that beginning in at least 2009 to the present, Defendants instituted a practice of automatically deducting 30 minutes of work time and, thus, 30 minutes of pay each day from each driver regardless of whether or not the driver actually took a 30 minute

duty free meal period if the driver worked beyond his minimum shift of eight or ten hours. This policy and/or practice resulted in Defendants not paying Plaintiff and the putative class members for all hours worked, including straight time and/or overtime compensation. Plaintiff was subjected to this policy and/or practice in his employment with all Defendants.

16. Moreover, Plaintiff is informed and believes and thereupon alleges that Defendants were and are aware or should have been aware that its drivers were and are not taking a 30 minute duty free meal period – yet Defendants were and are deducting 30 minutes of pay from its drivers automatically as described hereinabove. Defendants not only made no effort to adjust routes to allow the drivers to take a 30 minute duty free meal break, but Defendants control the drivers at all times (*e.g.*, limiting any break to within a one mile radius of the route) and are fully aware that many drivers will often log a break even though they are not actually taking one for fear of being disciplined. Defendants made such deductions without any notice or written authorization of Plaintiff or any putative class member. Plaintiff was subjected to this policy and/or practice in his employment with all Defendants.

17. Plaintiff can fairly and adequately represent and protect the interests of the class in that there is no conflict between their interests and the interests of the other class members, this action is not collusive, the named Plaintiff and counsel have the necessary resources to litigate this action and class counsel has the experience and ability to prosecute this case as a class action.

18. In addition, pursuant to California Labor Code § 2699.3, Mr. Parker took the initiative to notify the Labor and Workforce Development Agency ("LWDA") of these violations, including the facts and theories to support the violations, on or about February 1, 2013, and February 25, 2013. The LWDA did not notify Plaintiff that it would investigate the violations detailed in these letters within 33 calendar days of these letters, respectively. True and correct copies of the letters Plaintiff sent to the LWDA are attached hereto as Exhibit A.

19.     The certification of a class in this action is superior to the separate litigation of a multitude of cases by members of the putative class.  Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their fear of retaliation for joining a lawsuit against their current or former employer and/or their inability to afford the prosecution of separate, individual actions.  Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of litigation among all class members.

## INDIVIDUAL ALLEGATIONS

20.     In approximately November 2011, Mr. Parker suffered a work related injury in connection with an accident where his big-rig truck rolled over.  Mr. Parker suffered a broken shoulder and ribs, damage to his hip, and various injuries across the entire left side of his body.  He was taken to the emergency room and these injuries lasted at least six months.  He filed a workers' compensation claim related to these injuries and took a disability leave to undergo physical therapy and take time to heal. While Mr. Parker was on still on disability leave, in or about March 2012, DTI terminated his employment without talking to Mr. Parker at all about his disability status or ability to return to work.  DTI claimed Mr. Parker was being terminated for allegedly "stealing time" - *i.e.,* taking unrecorded breaks.  Mr. Parker explained that the time at issue were really just meal and/or rest breaks, but DTI didn't care.  DTI (and its predecessor Heartland Farms) had a progressive discipline policy – meaning an employee would essentially get three strikes (verbal, written, final) before being terminated.  But DTI did not follow its progressive discipline policy with Mr. Parker, nor did it do a fair, adequate, or thorough investigation.  Instead, he was terminated without any prior warnings whatsoever.  DTI also failed to engage in any interactive process with Mr. Parker, other than essentially stating that he could take a leave of absence or return to full duties, with no other options in between.  Plaintiff is informed

and believes that DTI (and/or its related predecessor/sister-companies) have a pattern and practice of terminating individuals because of their disabilities and often terminate employees while out on a disability related leave of absence.

21.     On or about February 27, 2013, Plaintiff filed charges of discrimination with the Department of Fair Employment and Housing and obtained an immediate right-to-sue notice.  Plaintiff has exhausted his administrative remedies.

## CLASS CLAIMS

## FIRST CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7. 512

## AGAINST ALL DEFENDANTS

## ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)

22.     Plaintiff, on behalf of himself and all putative class members, hereby realleges and incorporates herein paragraphs 1 through 19 of this complaint as though fully set forth.

23.     From at least 2009 to March 2012, Defendants failed to comply with California Labor Code §§ 226.7 and 512 because they did not authorize or permit its drivers rest periods for each three and one half hours worked and/or a duty-free-meal period after five hours of work, if at all.  Nor did Defendants authorize or permit a second duty-free-meal period after ten hours of work, or a mandatory second-duty-free-meal period after twelve hours of work when the first meal period had not been provided or taken.

24.     Under California Labor Code § 226.7, Plaintiff and putative class members are entitled to at least one hour of premium pay for each failure of Defendants to provide statutorily required rest and/or meal periods.

25.     Plaintiff and the putative class members have been damaged by Defendants' violation of the California Labor Code, and seek recovery of unpaid wages, interest, statutory penalties, and attorneys' fees, and costs, (in addition to civil penalties from defendant DTI) under California Labor Code §§ 203, 210, 226.3, 226.7,

558, 1194(a), and/or 2699 because Defendants did not pay Plaintiff and putative class members accurately in a timely manner for the rest periods and/or meal periods they were deprived of during their employment and/or upon their discharge.

26.     Plaintiff, on behalf of himself and the putative class members, has been required to retain counsel to pursue his rights and the rights of the putative class members and therefore seeks attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 226(g), 558 and/or 2699.

27.     Plaintiff, on behalf of himself and the putative class members, seeks an award of interest pursuant to California Labor Code § 218.6.

## SECOND CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE §§ 201-204

### AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)

28.     Plaintiff, on behalf of himself and all putative class members, hereby realleges and incorporates herein paragraphs 1 through 19, and 22 through 27 of this complaint as though fully set forth.

29.     California Labor Code § 204 requires that an employer who pays its employees semi-monthly must pay their employees all wages earned within 10 or 11 days following the semi-monthly pay period in which work was performed. Defendants paid Plaintiff semi-monthly.  Plaintiff is *informed* and believes all drivers were similarly paid semi-monthly.

30.     By failing to pay premium pay for meal and/or rest breaks that were not provided, Defendants failed to pay all wages earned within 10 or 11 days following the semi-monthly pay period in which work was performed.  Furthermore, as described herein, Defendants' policy and/or practice of automatically deducting 30 minutes of compensation from its employees' earned compensation if they worked more than their scheduled shift necessarily results in Defendants paying less than all wages earned and owed in a timely manner.  In fact, Defendants still owe Plaintiff and the putative class

members wages that they earned from at least 2004 to the present.  Accordingly, Defendants willfully have violated California Labor Code § 204.

31.   In addition, California Labor Code §§ 201-202 requires an employer to pay all earned wages upon termination of employment.  By failing to pay Plaintiff and the putative class members the foregoing wages upon termination, Defendants also violated California Labor Code §§ 201-202.

32.   Plaintiff, on behalf of himself and the putative class, seeks all unpaid wages and statutory penalties up to thirty (30) days worth of pay under California Labor Code § 203.  Pursuant to California Labor Code §§ 210 and 2699, Plaintiff and the putative class members seek civil penalties against Defendant DTI for its violation of California Labor Code §§ 201-204.

33.   Plaintiff, on behalf of himself and the putative class members, has been required to retain counsel to pursue his rights and the rights of the putative class members and therefore seeks attorneys' fees and costs pursuant to California Labor Code §§ 218.5 and 2699.

34.   Plaintiff, on behalf of himself and the putative class members, seeks an award of interest pursuant to California Labor Code § 218.6.

## THIRD CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE §§ 221-224

### AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)

35.   Plaintiff, on behalf of himself and all putative class members, hereby realleges and incorporates herein paragraphs 1 through 19, and 22 through 34 of this complaint as though fully set forth.

36.   California Labor Code § 221 prohibits employers from recollecting or otherwise clawing back any earned wages from its employees.  California Labor Code § 223 prohibits employers from secretly paying a lower wage than that to which the parties agreed.  California Labor Code § 224 prohibits employers from making any

deductions from employees' compensation that are not authorized in writing and in any event not such authorization can be used to violate Sections 221 or 223. As set forth herein above, Defendants violated these sections by automatically deducting 30 minutes of pay each day from each employee if they worked more than their minimum shift. Defendants did not have any authorization for making such deductions nor did they have any legitimate basis to do so given that Plaintiff and the putative class members were not authorized or permitted to take a 30 minute duty free meal break. Furthermore, Defendants were and are aware (or should have been aware) that their drivers routinely log a 30 minute break even though they do not actually take a 30 minute break (i.e., the drivers are never truly duty free and in any event rarely log a break within the first six hours of their shift). In addition, Defendants did not disclose this unlawful practice in any manner reasonably calculated to inform the aggrieved employees of its practice. Nor do the paystubs that Defendants provided to Plaintiff or any putative class member indicate that Defendants have deducted automatically 30 minutes of time, and, thus, compensation. Accordingly, Defendants violated these sections and did not pay all wages due in a timely manner during or after employment.

37. Plaintiff and the putative class members hereby seek all damages available, including liquidated damages and civil penalties as against defendant DTI, for Defendants' above described violations of the California Labor Code, including 25% of all amounts unlawfully withheld by Defendants pursuant to California Labor Code § 225.5.

38. Plaintiff, on behalf of himself and the putative class members, has been required to retain counsel to pursue their rights and the rights of the putative class members and therefore seek attorneys' fees and costs pursuant to California Labor Code § 218.5.

39. Plaintiff, on behalf of himself and the putative class members, seeks an award of interest pursuant to California Labor Code § 218.6.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 511, 1182.12 & 1194 AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)

40.    Plaintiff, on behalf of himself and all putative class members, hereby realleges and incorporates herein paragraphs 1 through 19, and 22 through 39 of this complaint as though fully set forth.

41.    Under California Labor Code § 1182.12, Defendants had a statutory obligation to pay Plaintiff and the putative class members at least the current minimum wage for all hours worked and under California Labor Code §§ 510, 511 overtime for hours worked in excess of eight (8) in a day (or 10 in a day depending on their shift) and/or 40 in a week.  By automatically deducting 30 minutes from drivers pay regardless of whether they worked during that time or not, when they worked in excess of their scheduled shift, Defendants failed to pay Plaintiff and the putative class members at least the current minimum wage for those hours worked and also failed to pay for 30 minutes of overtime compensation that was due.  Indeed, Defendants failed to pay for this time at all.  Such off-the-clock work is a violation of the Labor Code and the applicable IWC Order.

42.    Defendants' unlawful policies and practices necessarily resulted in lost earned wages, whether minimum wage, straight time or overtime compensation due under California Labor Code §§ 510, 511, 1182.12 and/or 1194, to the benefit of Defendant and detriment of Plaintiff and the putative class members.

43.    Pursuant to California Labor Code §§ 510, 511, 1182.12, 1194(a), and 1994.2 (and any other applicable section), Plaintiff on behalf of himself and all putative class members and/or aggrieved employees, hereby seeks recovery of all earned but unpaid wages, whether deemed unpaid minimum wage, straight time, or overtime compensation based on the above described policies and/or practices.

44.    Pursuant to California Labor Code §§ 210, 225.5, 1182.12, 1194, and

1194.2, Plaintiff, on behalf of himself and all putative class members, hereby seeks all damages available, including liquidated damages, (and civil penalties as against defendant DTI) for Defendant's above described violations of the California Labor Code, including 25% of all amounts unlawfully withheld by Defendants pursuant to California Labor Code § 225.5.

45.   Pursuant to California Labor Code §§ 218.6, 1194(a), and 2699, Plaintiff, on behalf of himself and all putative class members, seeks reasonable attorneys' fees, interest, and costs in an amount according to proof.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA LABOR CODE § 226

### AGAINST ALL DEFENDANTS

### ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)

46.   Plaintiff, on behalf of himself and all putative class members, hereby realleges and incorporates herein paragraphs 1 through 19, and 22 through 45 of this complaint as though fully set forth.

47.   California Labor Code § 226 requires employers to provide an accurate itemized statement showing the total wages due to the employee for the pay period. Cal. Lab. Code §§ 226(a).  As set forth above, Defendants failed to authorize and/or permit putative class members with required meal and/or rest breaks and/or failed to pay Plaintiff and the other putative class members all wages due.  Defendant accordingly owed putative class members premium pay as wages for those missed meal and/or rest breaks and/or additional earned compensation.  But Defendants failed to pay such wages.  Nor did they provide the putative class members with a pay stub that accurately reflected these wages due, the hours worked, the applicable pay rates, or any deductions that were being made.  Defendants, thus, violated California Labor Code § 226 for these and other reasons.

48.   Defendants' failure to comply with California Labor Code § 226(a) was knowing and intentional and each putative class member is entitled to statutory

1  penalties or actual damages under California Labor Code § 226(e).

2      49.    Plaintiff, on behalf of himself and the putative class members, also hereby
3  seeks civil penalties from defendant DTI pursuant to California Labor Code § 226.3,
4  which provides that any employer who violates California Labor Code § 226(a) shall
5  be subject to a civil penalty in the amount of $250 per employee per violation in an
6  initial citation and $1,000 per employee for each violation in a subsequent citation.
7  Under California Labor Code § 2699, Plaintiff and the putative class are entitled to
8  their share of this civil penalty because DTI's violation was knowing, intentional, and
9  certainly not inadvertent or due to a clerical error.

10     50.    Plaintiff, on behalf of himself and the putative class members, also hereby
11 requests attorneys' fees, costs, and interest pursuant to California Labor Code § 226(g).

12                        **SIXTH CAUSE OF ACTION**
13        **(VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***
14                        **AGAINST ALL DEFENDANTS**
15  **ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED)**

16     51.    Plaintiff, on behalf of himself and all putative class members, hereby
17 realleges and incorporates herein paragraphs 1 through 19, and 22 through 50 of this
18 complaint as though fully set forth.

19     52.    As described hereinabove, Defendants followed a policy and practice of
20 failing to authorize and/or permit meal and/or rest breaks, failing to timely pay wages
21 due and owing, automatically deducting 30 minutes of pay from each employee if they
22 worked more than their scheduled shift, and failing to provide an accurately itemized
23 paystub, from at least 2009 through 2012 and/or to the present.  During this time
24 period, Defendants failed to follow the law and failed to pay all wages due to Plaintiff
25 and the putative class members.

26     53.    Defendants knowingly, intentionally, and fraudulently concealed its
27 unlawful payroll practices from Plaintiff and the putative class members so that it
28 could save money and bolster its bottom line.  Defendants engaged in this sharp,

1  unlawful, and unfair practice to avoid payment to Plaintiff and the putative class

2  members of that what was legal owed to them.  In engaging in the aforementioned

3  conduct, Defendants have engaged in unlawful, unfair, and fraudulent business

4  practices in violation of California Business and Professions Code §§ 17200 *et seq.*

5      54.    Plaintiff and the putative class members have suffered economic harm and

6  actual injury as the result of Defendants' unlawful, unfair, and fraudulent business

7  practices and, therefore, has standing to bring this action on behalf of himself and the

8  putative class members.

9      55.    As the result of Defendants' unlawful, unfair, and fraudulent conduct,

10  Defendants have been unjustly enriched insofar as Defendants have withheld and

11  recouped wages that were due to Plaintiff and the putative class members and avoided

12  its legal obligation to pay Plaintiff and the putative class members wages and statutory

13  penalties that were due to them.

14      56.    Plaintiff, on behalf of himself and the putative class members, is entitled

15  to restitution of all of the wages earned and due to the putative class members, any

16  other of Defendants' ill begotten gains.

17      57.    Plaintiff, on behalf of himself and the putative class members, also seeks

18  interest on the amount of restitution awarded to Plaintiff and the putative class

19  members.

20      58.    Plaintiff, on behalf of himself and the putative class members, also seeks

21  attorneys' fees under California Code of Civil Procedure § 1021.5 because this lawsuit

22  seeks to enforce important public rights guaranteed by the California Labor Code.

## SEVENTH CAUSE OF ACTION

### (DISABILITY DISCRIMINATION

### IN VIOLATION OF CAL. GOV'T CODE §§ 12900 *ET SEQ.*

### AGAINST DEFENDANT DTI AND DOES 1-10

### ON BEHALF OF PLAINTIFF ALONE)

28      59.    Plaintiff hereby realleges and incorporates herein paragraphs 1 through 58

of this complaint as though fully set forth.

60.     Under the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*, it is an unlawful employment practice for an employer to discharge an employee in whole or in part because of an employee's disability, record of disability, or because they are regarded as disabled. *See, e.g.*, Cal. Gov't Code § 12940(a).

61.     As set forth above, Plaintiff suffered from a disability under California law because he had a broken shoulder and ribs, damage to his hips and nearly the entire side of his left body, which limited him in several major life activities, including walking, reaching, lifting, pulling, pushing, and otherwise performing every day tasks. Plaintiff made Defendant aware he was disabled and requested reasonable accommodations for his disability, e.g., a disability leave of absence. In addition, Defendant clearly regarded Plaintiff as disabled given his disability status and his request for a disability leave of absence. While Defendant initially purported to grant Plaintiff the leave of absence that he required, Defendant then summarily terminated Plaintiff while he was still on his leave of absence for false and/or trivial reasons, which were merely pretextual. Nor did Defendant follow its progressive discipline policy – or even conduct a fair, impartial, adequate, and thorough investigation. Moreover, the claimed reason for termination was not even lawful and/or legitimate because Plaintiff was actually entitled to take breaks as a matter of law and, therefore, only further evidences pretext. After many years of dedicated service, Defendant only terminated Plaintiff once he became disabled. Defendant, thus, terminated Plaintiff because of his disability in violation of the FEHA.

62.     As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

63.     As a further direct, legal and proximate result of Defendant's conduct,

1    Plaintiff was caused to and did employ the services of counsel to prosecute this action,

2    and is accordingly entitled to an award of attorneys' fees according to proof.

3         64.    Plaintiff is informed and believes and thereupon alleges that Defendant's

4    actions and each of them were taken with malice, oppression, fraud, and/or willful and

5    conscious disregard of Plaintiff's rights, and were carried out by Defendant's

6    managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive

7    damages in an amount to be determined at trial.

8                         **EIGHTH CAUSE OF ACTION**

9              **(FAILURE TO PROVIDE REASONABLE ACCOMMODATION**

10             **IN VIOLATION OF CAL. GOV'T CODE §§ 12900 *ET SEQ.***

11                  **AGAINST DEFENDANT DTI AND DOES 1-10**

12                       **ON BEHALF OF PLAINTIFF ALONE)**

13        65.    Plaintiff realleges and incorporates herein paragraphs 1 through 64 of this

14   complaint as though fully set forth.

15        66.    Under the FEHA, it is an unlawful employment practice for an employer

16   to fail to offer a reasonable accommodation to an employee with a disability, record of

17   a disability, or perceived disability.  *See, e.g.*, Cal. Gov't Code § 12940(m).

18        67.    As set forth above, Plaintiff suffered from a disability under California

19   law.  Plaintiff made Defendant aware he was disabled and requested reasonable

20   accommodations for his disability, e.g. a disability leave of absence.  In addition,

21   Defendant clearly regarded Plaintiff as disabled given his status at time on a disability

22   leave of absence.

23        68.    Defendant did not ultimately provide the accommodation requested (a

24   leave of absence) because it terminated Plaintiff while he was still on leave without

25   talking to him at all about his disability status or ability to return to work.  (And this

26   was not an "indefinite" leave as Plaintiff had provided DTI with a date for his return.)

27   Moreover, when Plaintiff became disabled, Defendant failed to engage in any

28   interactive process to identify possible accommodations that would have allowed

Plaintiff to remain employed.  Defendant merely told Plaintiff that he either had to take a leave of absence or return to his position full time with no accommodations. Defendant failed to explore any alternatives, such as an office job that might have enabled Plaintiff to return to work.  Defendant, thus, failed to reasonably accommodate Plaintiff in violation of the FEHA.

69.   As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

70.   As a further direct, legal and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

71.   Plaintiff is informed and believes and thereupon alleges that Defendant's actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF CAL. GOV'T CODE §§ 12900 *ET SEQ*. AGAINST DEFENDANT DTI AND DOES 1-10 ON BEHALF OF PLAINTIFF ALONE)

72.   Plaintiff realleges and incorporates herein paragraphs 1 through 71 of this complaint as though fully set forth.

73.   Under the FEHA, it is an unlawful employment practice for an employer to fail to engage in a timely, good-faith interactive process with a disabled employee to determine if a reasonable accommodation exists.  *See, e.g.*, Cal. Gov't Code § 12940(n).

74.   As set forth above, Plaintiff suffered from a disability under California

law.  Plaintiff made Defendant aware he was disabled and requested reasonable accommodations for his disability, e.g. a disability leave of absence.  In addition, Defendant clearly regarded Plaintiff as disabled given his status at time on a disability leave of absence.

75.    Defendant did not ultimately provide the accommodation requested (a leave of absence) because it terminated Plaintiff while he was still on leave without talking to him at all about his disability status or ability to return to work.  Moreover, when Plaintiff became disabled, Defendant failed to engage in any interactive process whatsoever to identify possible accommodations that would have allowed Plaintiff to remain on active duty (such as a desk/office job, part-time duties, etc.).  Defendant merely told Plaintiff that he either had to take a leave of absence or return to his position full time with no accommodations and/or restrictions.  Defendant failed to explore any alternatives.  Defendant, thus, failed to engage in a good-faith interactive process in violation of the FEHA.

76.    As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

77.    As a further direct, legal and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

78.    Plaintiff is informed and believes and thereupon alleges that Defendant's actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

FIRST AMENDED COMPLAINT

**TENTH CAUSE OF ACTION**

**(WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**AGAINST DEFENDANT DTI AND DOES 1-10**

**ON BEHALF OF PLAINTIFF ALONE)**

79.    Plaintiff realleges and incorporates herein paragraphs 1 through 78 of this complaint as though fully set forth.

80.    It is against fundamental and well-established public policy to discharge an employee because of his disability, fail to accommodate the employee, and fail to engage in the interactive process.  This fundamental public policy is embodied in the FEHA and California Constitution.  *See, e.g.*, Cal. Gov't Code § 12940(a), (m), (n).  It is also against fundamental and well-established public policy to deny an employee a meal and/or rest break.  Cal. Lab. Code §§ 226.7 and 512.  In addition, it is also against a fundamental public policy of the State of California to discharge or otherwise retaliate against an employee who files or threatens to file a claim for workers' compensation benefits.  *See* Cal. Lab. Code § 132a.

81.    As set forth above, Defendant discharged Plaintiff in whole or in part in violation of these fundamental public policies and/or because Plaintiff opposed these practices.  Defendant, thus, has committed the tort of wrongful discharge in violation of public policy.

82.    As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, loss of wages and benefits pursuant to which Plaintiff is entitled to general and special damages according to proof.

83.    Plaintiff is informed and believes and thereupon alleges that Defendant's actions and each of them were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendant's managing agents and/or ratified by Defendant.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Scott Parker, on behalf of himself and those similarly situated, prays for judgment against Defendants Dean Transportation, Inc., Dean Foods of Southern California, LLC (dba Heartland Farms), SBM Dairies, Inc., Alta-Dena Certified Diary, LLC, and Does 1 through 10, inclusive, and each of them, as follows:

1. For general damages according to proof, on each cause of action for which such damages are available;

2. For compensatory damages, according to proof on each cause of action for which such damages are available;

3. For special damages, including punitive damages, according to proof on each cause of action for which such damages are available;

4. For statutory and civil penalties, according to proof on each cause of action for which such damages are available;

5. For prejudgment and postjudgment interest on any lost or unpaid wages according to law;

6. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Government Code § 12965, California Labor Code §§ 218.5, 226, 1194(a), California Code of Civil Procedure § 1021.5, and any other relevant provision under California law that provides for attorneys' fees;

7. For equitable relief to the extent available under law;

8. For statutory penalties to the extent available under law; and

9. For such other and further relief as the Court deems proper and just.

1  **PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY OF ALL CAUSES OF**

2  **ACTION ALLEGED HEREIN.**

3  DATED:  May 30, 2013

THE LAW OFFICES OF
TIMOTHY B. McCAFFREY, JR.

By _____
   Natasha Chesler

   Attorneys for Plaintiff and Class
   Representative Scott Parker

FIRST AMENDED COMPLAINT