TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
NATASHA CHESLER (S.B. #227540)
THE LAW OFFICES OF TIMOTHY B. McCAFFREY, JR.
A Professional Corporation
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310) 882-6407
Facsimile: (310) 882-6359
E-Mail: tmccaffrey@tbmlaw.net
E-Mail: nchesler@tbmlaw.net

Attorneys for Plaintiff and Class Representative
Scott Parker

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT PARKER, on behalf of himself and those similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>DEAN TRANSPORTATION, INC., an Ohio Corporation; DEAN FOODS OF SOUTHERN CALIFORNIA, LLC (dba HEARTLAND FARMS), a Delaware Limited Liability Company; SBM DAIRIES, INC., a California Corporation; and DOES 1 through 20, inclusive,<br><br>            Defendants. | CASE NO. CV13-02621-BRO (VBK)<br><br>**DECLARATION OF NATASHA CHESLER IN SUPPORT OF PLAINTIFF'S OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Date:          July 15, 2013<br>Time:          1:30 p.m.<br>Courtroom:  14 |

## DECLARATION OF NATASHA CHESLER

I, Natasha Chesler, declare as follows:

1.     I have personal knowledge of all facts set forth below, except for matters stated upon information and belief, which I believe to be true.  If called upon to do so, I could and would competently testify as stated herein.  I am one of the counsel of record for plaintiff Scott Parker ("Plaintiff" or "Mr. Parker") in the instant matter.

2.     Defendant failed to engage in any meet and confer efforts whatsoever prior to the filing of its motion.  Defendant initially filed a motion to dismiss on May 20, 2013.  (Dkt. No. 20.)  Plaintiff thereafter filed a First Amended Complaint ("FAC") on May 31, 2013.  (Dkt. No. 25.)  But Defendant never thereafter met and conferred with Plaintiff thereafter regarding the filing of the instant motion.

3.     Attached hereto as Exhibit A are true and correct copies of the following orders cited in Plaintiff's notice:

     a.     *Iniguez* v. *Evergreen Aviation Ground Logistics Enter, Inc.,* Case No. CV-07-7181 ARM, *consolidated with Trujillo* v. *Evergreen Aviation Ground Logistics Enter., Inc.,* Case No. CV-07-7r84 ARM (VBKx) (C.D. Cal., Sept. 11,2009);

     b.     *Kastanos* v. *Central Concrete Supply Co., et al.,* Case No. RG07-319366 (Cal. Sup. Ct., Sep. 11, 1009);

     c.     *Cemex Wage Cases,* Case No. CJC-07-004520 (Cal. Sup. Sup. Ct., February 19,2010);

     d.     *Morrison* v. *Knight Transportation, Inc.* Case No. 228016 (Cal. Sup. Ct., Sept. 29,2009);

     e.     *Williams* v. *Ruan Inc.,* Case No. 09-231235, (Cal. S!lP. Ct. May 17, 2010)*; and

     f.     *Dunbar Armored, Inc.* v. *Rea,* Case No. 04-0602 (S.D. Cal., July 4, 2008).

4.     There is currently another case pending in the Central District on behalf of a different plaintiff against Dean Foods' sister corporation, Alta-Dena Certified Dairy, LLC.  (*de la Cueva* v. *Alta-Dena Certified Dairy, LLC*, Case No. CV 12-01804 GHK (CWx).  The plaintiff in that case sought class certification, which was ultimately denied solely based on his adequacy as a class representative.  (*Id.,* Dkt. No. 61.)

1  Counsel for both plaintiff and defendant in that case are the same counsel in this case.

2     3.     Prior to moving for class certification in the *de la Cueva* matter, the

3  plaintiff in that case sought to add Dean Foods of Southern California, LLC (dba

4  Heartland Farms) ("Dean Foods") (the defendant in this case) as an additional

5  defendant.  Alta-Dena strenuously opposed that effort and **on February 6, 2013**

6  represented to the Court: "Dean Foods of Southern California, LLC…*never merged*

7  *with or into Alta-Dena, and is still an active legal entity in its own right in California*."

8  (Id., Dkt. No. 43 at p. 16, underline emphasis in original.)  The Court then denied Mr. de la

9  Cueva's request to add Dean Foods to the *de la Cueva* matter.[1]

10     4.     On February 25, 2013, I checked Dean Foods' corporate status on the

11  California Secretary of State's website, which confirmed that it was still an "active"

12  legal entity at that time.  (Attached hereto as Exhibit B is a true and correct copy of a

13  printout I made from the California Secretary of State's website on that date.)  Thus,

14  based on defense counsel's express representation, confirmed by the California

15  Secretary of State website, on February 28, 2013, Plaintiff filed the instant action and

16  named his former employer Dean Foods as a defendant.  Yet now Dean Foods – in

17  contradiction of its earlier representations – claims it is no longer an active legal entity

18  and that instead Alta-Dena is the proper party.  Further compounding the matter,

19  Defendant has also represented to Plaintiff and the Court that on January 1, 2011, all of

20  Dean Foods' drivers were transferred to another sister corporation, co-defendant DTI.

21  Obviously, Plaintiff wants to name the proper party.  Defendant has just made it

22  unnecessarily complicated in doing so with its contradictory statements.

23     5.     Accordingly, on May 29, 2013, I asked Defendant's counsel for the actual

24  merger agreement and documents related to the transfer of Dean Foods' drivers to

25  _____

26  [1] After this case was filed and I brought the representation to defense counsel's
    attention, Defendant's counsel claimed this was allegedly a mistake and filed a notice

27  of errata.  (Case No. CV 12-01804 GHK, Dkt. No. 56.)

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS

1  Dean Transportation, Inc.  (A true and correct copy of that email is attached hereto as

2  Exhibit C.)  Defendant never responded to this request.

3      6.      True and correct copies of the PAGA letters sent to the LWDA on

4  Plaintiff's behalf are attached hereto as Exhibit D.

5      I declare under penalty of perjury under the laws of the State of California, and

6  the United States of America, that the foregoing is true and correct.

7      Executed June 24, 2013, at Los Angeles County, California.

8

9      _____

10      Natasha Chesler

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NATASHA CHESLER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS

**EXHIBIT A**

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 6 of 57   Page ID #:1527
Case 2:11-cv-07284-JHI...JW   Document 34-1   Filed 05/30/13   Page 6 of 66   Page ID #:874
Case 2:11-cv-07284-JHI...JW   Document 34-1   Filed 01/23...   2   Page 1 of 29   Page #:868
Case 2:07-cv-07181-...M-VBK   Document 63   Filed 09/...2009   Page 1 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
|---|---|
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | | Not Reported | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

Proceedings:          IN CHAMBERS (No Proceedings Held)

In each of the above-captioned consolidated cases, a putative class of employees asserts state law wage-and-hour claims against their employer, Evergreen Aviation Ground Logistics Enterprise, Inc. ("EAGLE"). The plaintiffs are individuals who work on airport tarmacs in California and are responsible for marshaling planes in and out of gates, and handling passenger luggage. EAGLE has moved for summary judgment that the Airline Deregulation Act ("ADA") preempts all of Plaintiffs' claims. For the reasons discussed below, the Court finds that Plaintiffs' claims are not preempted.

## I.   BACKGROUND[1]

EAGLE provides ground handling services to a variety of airlines throughout the country. SGI ¶ 1. During the relevant period, EAGLE's California employees operated "ramp services" at Los Angeles, San Francisco, and San Diego airports, and serviced approximately 2,000 flights per year. SGI ¶¶ 3-4. The putative Plaintiff classes are comprised of EAGLE employees who provided the ramp services, which include: "wanding" planes towards the gates; towing planes into and out of the gates; unloading luggage from the planes; transporting luggage between the planes and the bag rooms; loading luggage into the planes; completing paperwork regarding load and unload times, and the time the planes left the gate; ensuring the ramp area is free from foreign objects; and performing "wing walks" to ensure that the planes do not hit an object. SGI ¶¶ 11-

---

[1] All facts below are undisputed unless otherwise noted.

Exhibit 1

EXHIBIT - A, PAGE 1
PAGE 4

Case 2:13-cv-02621-BRO-VBK  Document 40  Filed 06/24/13  Page 7 of 57  Page ID #:1528
Case 2:13-cv-02621-BRO-VBK  Document 34-1  Filed 05/30/13  Page 7 of 66  Page ID #:875
#:869
Case 2:07-cv-07181-AHM-VBK  Document 63  Filed 09/ /2009  Page 2 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

20. For obvious reasons, these duties are critical to passenger service, safety, and security. SGI ¶ 21.

Named Plaintiff Miguel Iniguez asserts that from January 2006 to August 2007, he never received an uninterrupted thirty-minute meal break, and that he never received two ten-minute rest periods during his shift. SGI ¶¶ 38, 40. Similarly, named Plaintiff Luis Trujillo alleges that he never received more than a five-minute uninterrupted meal period, and that he never received ten uninterrupted minutes for a rest break. SGI ¶¶ 31, 33. EAGLE admits that it automatically deducts 30 minutes for meal breaks from plaintiffs' time records each shift, whether or not plaintiffs get an uninterrupted meal break or any meal break at all. SGI ¶ 109.[2] Plaintiffs also allege that they were not paid for time spent traveling from airport parking lots, through security check points, and on company shuttles to the main office, where they were permitted to "clock in." Finally, Plaintiffs allege that EAGLE did not reimburse them for the purchase of safety gear.

## II. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[2] Plaintiffs did not adhere to the Court's Scheduling and Case Management Order, which states that "[t]he opposing party may submit additional material facts that bear on or relate to the issues raised by the movant, which shall follow the format described above for the moving party's separate statement. These additional facts shall continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set forth in the right hand column the evidence that supports that statement." The Court has thus renumbered the additional material facts Plaintiffs stated in their SGI. The additional fact at paragraph "1" is referred to herein at SGI ¶ 95, new paragraph "2 " is referred to as SGI ¶ 96, and so on.

Both parties also failed to tab their exhibits, in violation of this Court's requirements. Future violations will invite sanctions.

CV-90 (06/04)            CIVIL MINUTES - GENERAL            Page 2 of 17

Exhibit 1

EXHIBIT - A, PAGE 2
PAGE 5

Case 2:13-cv-02621-BRO-VBK Document 40 Filed 06/24/13 Page 8 of 57 Page ID #:1529
Case 2:11-cv-07284-JHL-PJW Document 34-1 Filed 05/30/13 Page 8 of 66 Page ID #:876
#:870
Case 2:07-cv-07181-AHM-VBK Document 63 Filed 09/11/2009 Page 3 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a

## Exhibit 1

EXHIBIT - A, PAGE 3
PAGE 6

Case 2:13-cv-02621-BRO-VBK Document 40 Filed 06/24/13 Page 9 of 57 Page ID #:1530
Case 2:11-cv-07284-JHN-JWJ Document 24-1 Filed 05/30/13 Page 9 of 66 Page #:877
#:871
Case 2:07-cv-07181-AHM-VBK Document 63 Filed 09/11/2009 Page 4 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

## III. ANALYSIS

All of Plaintiffs' claims allege that EAGLE violated California's wage-and-hour and working condition laws. Specifically, Plaintiffs assert that they did not receive: (1) minimum and overtime wages for all hours worked (Cal. Labor Code §§ 1194, 1199); (2) required meal and rest breaks, or premium pay for missed meal periods and rest breaks (Cal. Labor Code §§ 226.7, 512; and Wage Order 9); (3) wages due at termination (Cal. Labor Code §§ 202-03); (4) properly itemized wage statements (Cal. Labor Code § 226); and (5) reimbursements for buying mandatory safety gear (Cal. Labor Code § 2802). Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., plaintiffs also seek restitution and injunctive relief for these alleged violations.

EAGLE contends that the ADA preempts all of these claims. The ADA, which was passed by Congress as part of a scheme to deregulate the airline industry, provides that state governments "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). It is Defendant's burden to show that the ADA preempts Plaintiffs' claims. *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 83 (2d Cir. 1997). As explained below, Defendant has not met this burden.

### A. Applicability of the ADA Preemption Provision

The ADA's preemption provision applies only to state action affecting the "price, route or service of an air carrier *that may provide air transportation under this subpart*."

## Exhibit 1

EXHIBIT - A, PAGE 4
PAGE 7

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

49 U.S.C. § 41713(b)(1).  Defendant's opening brief conspicuously and tellingly omits all of the words after "air carrier" in its blockquote of this provision (and does not include an ellipsis to indicate omitted words).  Motion at 6.  Plaintiffs assert that EAGLE is not an "air carrier" because it only provides ground services to airlines, and that therefore EAGLE may not invoke the preemption provision.  But Plaintiffs fail to provide any analysis or authority regarding the definition of "air carrier" or the scope of the phrase "air carrier that may provide air transportation under this subpart."

Defendant replies that the National Mediation Board ("NMB") and the National Labor Relations Board ("NLRB") previously certified it as an "air carrier," and it therefore may avail itself of the ADA preemption provision.  But Defendant only cites opinions from those Boards discussing the Railway Labor Act, which applies to "every common carrier by air" *and* "every . . . person who performs any work as an employee or subordinate official of such carrier . . . ."  45 U.S.C. § 181.  The agency opinions cited by Defendants did *not* conclude that EAGLE is an air carrier; they concluded only that EAGLE and its employees are subject to control by air carriers and are therefore covered by the Railway Labor Act.  *Evergreen Aviation Logistics Enters., Inc.*, 25 NMB 460, 464-65 (1998) ("NMB Letter"); *Evergreen Aviation Ground Logistics Enters., Inc.*, 327 NLRB 869, 870 (1999) ("NLRB Order").  Indeed, both the NMB letter and the NLRB order specifically noted that the test they applied related to a company "that does not fly aircraft for the public transportation of freight or passengers."  NMB Letter at 461; NLRB Order at 869 n.1.  The Court is aware of no provision in the ADA that parallels the control provision of 45 U.S.C. § 181, and these agency opinions thus have no relevance to an analysis of the ADA's preemption provision, 49 U.S.C. § 41713(b)(1).[3]

---

[3]  In two respects Defendants counsel attempted to distort the analyses this Court has the duty to make: deleting the full text of 49 U.S.C. § 41713(b)(1) and failing to acknowledge the true basis for the NMB and NLRB certificates.  They should be ashamed to have displayed such flagrant unprofessionalism.  Such inappropriate lawyering always hurts the client's interest.  So egregious is this misconduct that Defendant's counsel are therefore ORDERED to deliver this ruling to the chief decision maker for EAGLE and to highlight and discuss this footnote with the client.  By not later than September 21, 2009, Defendant's counsel shall file a declaration confirming that he

Exhibit 1

EXHIBIT - A, PAGE 5
PAGE 8

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 11 of 57   Page ID #:1532
Case 2:13-cv-02621-BRO-VBK   Document 24-1   Filed 05/30/13   Page 11 of 66   Page ID #:873
Case 2:11-cv-07284-JHI . PJW   Document 34-9   Filed 01/2. . 2   Page 6 of 29   Page ID
#:873
Case 2:07-cv-07181-A M-VBK   Document 63   Filed 09/. .2009   Page 6 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

Title 49 defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102. Given that EAGLE provides only ground services, it is hard to understand how it could fit within the scope of this definition, notwithstanding that the ground services arguably help those who do provide air transportation. Moreover, § 41713(b)(1) refers to an "air carrier *that may provide air transportation* under this subpart." If Congress meant § 41713(b)(1) to encompass the effects of state laws even on air carriers that only "indirectly" provide air transportation, it would not have added the phrase "that may provide air transportation." It would have just referred to "air carriers." Moreover, it would make no sense to preempt laws that affect the "routes" of a company like EAGLE, which only provides ground services and thus flies no routes. In addition, Section 41713(b)(1) refers to "air transportation *under this subpart*." That language likely refers to 49 U.S.C. § 41101, which states "an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation." 49 U.S.C. § 41101(a)(1). EAGLE has provided no evidence that it holds such a certificate.

Given the apparent inapplicability of § 41713(b)(1) to state law effects on EAGLE's's prices and services, it is surprising that EAGLE's motion presents little evidence of how Plaintiffs' state law claims would affect the services, prices and routes of air carriers providing air transportation, *i.e.*, the airlines EAGLE serves. But because there is some ambiguity in the statute, and because the parties did not provide adequate briefing on this issue, this Court will apply § 41713(b)(1) in light of the Court's understanding of the effects on the prices, routes, and services of the air carriers that hire EAGLE, and on the prices and services of EAGLE itself. Either way, the preemption provision does not apply.

**B.    Governing Case Law on ADA Preemption**

Courts frequently interpret the ADA's preemption provision in light of case law

---

did so and identifying the individual to whom he showed this order. Further displays of shoddy game-playing by Defendant's counsel will result in sanctions.

Exhibit 1

EXHIBIT - A, PAGE 6
PAGE 9

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 12 of 57   Page ID #:1533
Case 2:13-cv-02621-BRO-VBK   Document 24-1   Filed 05/30/13   Page 12 of 66   Page ID #:874
Case 2:11-cv-07284-JHI-JW   Document 380   Filed 01/12   Page 7 of 29   Page ID #:874
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/ 2009   Page 7 of 17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

applying an identical provision that was enacted after the ADA in the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), a statute that (despite its name) deregulated the trucking industry. And the converse is also true: Courts frequently interpret the FAAAA in light of prior analyses of the ADA. *See, e.g., Rowe v. N.H. Motor Transp. Ass'n*, 128 S.Ct. 989 (2008) (applying the FAAAA in light of the Supreme Court's ADA precedents); *Air. Trans. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222-24 (2d Cir. 2008) (applying *Rowe* to hold that the ADA preempted a "passengers' bill of rights").[4]

In *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca* ("*Mendonca*"), the Ninth Circuit applied the FAAAA's preemption provision to a California wage-and-hour statute, and found as a matter of law that the law was not preempted. 152 F.3d 1184 (9th Cir. 1998), *cert. denied*, 526 U.S. 1060 (1999). Because *Mendonca* is directly on point and is still good law, it governs this Court's application of the ADA's preemption provision to Plaintiffs' wage-and-hour and working condition claims. This Order will therefore discuss *Mendonca's* reasoning and holding in some detail.

In *Mendonca*, a coalition of transportation contractors sued several California state agencies for declaratory and injunctive relief from the enforcement of California's prevailing wage law. That law requires contractors awarded public works contracts to pay their workers not less than the general prevailing rate for work of a similar character in the locality in which the public work is performed. Failure to pay prevailing wages results in penalties against the employer. Cal. Labor Code §§ 1771, 1775. The contractors contended that the FAAAA preempted the prevailing wage law because the law increased the prices they charged to customers by 25 percent, caused them to utilize independent owner-operators, and compelled them to re-direct and re-route equipment to  compensate for lost revenue. *Id.* at 1186, 1189.

---

[4] The FAAAA provision states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . ." 49 U.S.C. § 14501(c)(1). EAGLE's motion relies heavily on *Rowe*.

Exhibit 1

EXHIBIT - A, PAGE 7
PAGE 10

Case 2:13-cv-03621-BRO-VBK   Document 40   Filed 06/24/13   Page 13 of 57   Page ID #:1534
Case 2:11-cv-07284-JHI   JW   Document 24-1   Filed 05/30/13   Page 13 of 66   Page ID #:875
Case 2:07-cv-07181-A  M-VBK   Document 63   Filed 09/  .2009   Page 8 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 07-7181 AHM (VBKx)<br>CV 07-7184 AHM (VBKx) | Date | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.<br>TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

The Ninth Circuit began its analysis "with the assumption that state law dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest." *Id.* at 1186 (citing *Cal. Div. of Labor Standards v. Dillingham Constr., Inc.*, 519 U.S. 316, 330 (1997); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The court then turned to the text of the preemption provision, which (like many preemption provisions) is frustratingly vague, and has a number of explicit exemptions that did not apply. The Ninth Circuit thus concluded that the text offered little direction. *Id.* at 1187.

Next, *Mendonca* considered the legislative history of the FAAAA, which revealed that (1) the FAAAA, like the ADA, was passed because Congress believed that deregulation was necessary to eliminate non-uniform state regulations; and (2) by passing a preemption provision for trucking companies identical to the ADA provision, Congress sought to "even the playing field" between air carriers and motor carriers. The Ninth Circuit also noted that of the ten jurisdictions that Congress found did not regulate intrastate prices, routes, and services, seven jurisdictions had prevailing wage laws. When coupled with the absence of any positive indication in the legislative history that Congress intended preemption in this area of traditional state power, the court considered this "indirect evidence" of Congress's intent. *Id.* at 1187-88.

Finally, the Ninth Circuit turned to recent Supreme Court cases interpreting the preemptive scope of the ADA and ERISA preemption provisions, including *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (holding that although the ADA may preempt state laws with only an indirect effect on rates, routes, or services, some state action may affect fares in "too tenuous, remote, or peripheral a manner" to be preempted), *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) (holding that ADA preempted state regulation of frequent flyer program), *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) (reading *Morales* narrowly to hold that traditional state regulation having no more than an indirect effect on ERISA plans were not "related to" such plans), and *Dillingham Construction, supra* (holding that ERISA did not preempt prevailing wage law). The Ninth Circuit summarized these cases as "instruct[ing] that state regulation in an area of traditional state power having no more than an indirect, remote, or tenuous effect on a motor carriers' prices, routes, and services are [sic] not preempted." *Mendonca*, 152 F.3d at

## Exhibit 1

EXHIBIT - A, PAGE 8
PAGE 11

Case 2:13-cv-03621-BRO-VBK   Document 40   Filed 06/24/13   Page 14 of 57   Page ID #:1535
Case 2:11-cv-07284-JH...JW   Document 24-1   Filed 05/30/13   Page 14 of 66   Page ID #:876
Case 2:07-cv-07181-A...M-VBK   Document 63   Filed 09/...2009   Page 9 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

Title     INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.
        TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.

1188.

Based upon this analysis, the Ninth Circuit concluded that California's prevailing wage law is not "related to" prices, routes or services, even though the trucking coalition asserted that the law increased its prices by 25 percent, caused it to utilize independent owner-operators, and compelled it to re-direct and re-route equipment. *Mendonca* held,

> While [the prevailing wage law] in a certain sense is "related to" [the employers'] prices, routes and services, we hold that the effect is no more than indirect, remote and tenuous. . . . We do not believe that the [law] frustrates the purpose of deregulation by *acutely* interfering with the forces of competition. . . . Nor can it be said, borrowing from Justice Scalia's concurrence in *Dillingham*, that [the prevailing wage law] falls into the "field of laws" regulating prices, routes, or services.

*Id.* at 1189 (citations omitted).

After *Mendonca*, the Supreme Court issued *Rowe v. New Hampshire Motor Transport Association*, 128 S.Ct. 989 (2008), its third pronouncement on the ADA/FAAAA provisions, but nothing in *Rowe* invalidates the holding in *Mendonca*. *Rowe* concerned a Maine statute that required motor carriers transporting tobacco to ensure that purchasers met certain age and identification requirements. *Rowe*, like *Mendonca*, relied heavily on *Morales* and *Wolens* but concluded that the FAAAA preempted the Maine statute. The Maine statute at issue in *Rowe* is unlike the wage-and-hour statute at issue in *Mendonca* or the claims in this case. For example, unlike wage-and-hour laws of general applicability, the Maine law was "aim[ed] directly" at trucking and motor carrier services, creating a direct "connection with" them. *Rowe*, 128 S.Ct. at 995, 998. In addition, the Maine law required motor carriers to offer identification services that they did not already provide. *Id.* at 995. And although the Supreme Court was not convinced that the public-health purpose of the Maine statute exempted it from FAAAA preemption, *id.* at 996-97, the Court did not back away from its longstanding and general reluctance to preempt matters traditionally within a state's police powers, including labor standards. *See generally Dillingham*, 519 U.S. at 330-32; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) ("Pre-emption of employment

**Exhibit 1**

EXHIBIT - A, PAGE 9
PAGE 12

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 15 of 57   Page ID #:1536
Case 2:11-cv-07284-JHN-VBK   Document 24-1   Filed 05/29/13   Page 15 of 66   Page ID #:877
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/11/2009   Page 10 of 17

O

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 07-7181 AHM (VBKx)<br>CV 07-7184 AHM (VBKx) | Date | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.<br>TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

standards within the traditional police power of the State should not be inferred lightly."); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987) ("[P]re-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."); *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996) ("It is well settled that wages are a subject of traditional state concern . . . .").

In addition, the Ninth Circuit's holding in *Mendonca* is in line with that of other courts finding that the ADA does not preempt employment laws related to compensation. *See, e.g., DiFiore v. Am. Airlines, Inc.*, 483 F. Supp. 2d 121 (D. Mass. 2007) (Massachusetts Tips Law not preempted by the ADA); *Fitz-Gerald v. Skywest Airlines, Inc.* 155 Cal. App. 4th 411, 422 (Cal. Ct. App. 2007) (actions to enforce state minimum wage laws and state laws governing meal/rest breaks not preempted by ADA); *see also Air Transport Ass'n of Am. v. City & County of S.F.*, 266 F.3d 1064 (9th Cir. 2001) (ordinance prohibiting discrimination in provision of employment benefits to domestic partners not preempted by ADA). *But see Travers v. JetBlue Airways Corp.*, No. 08-10730-GAO, 2009 WL 2242391 (D. Mass. July 23, 2009) (Massachusetts Tips Law and Massachusetts Minimum Wage Law preempted by the ADA when applied to manner in which airline collected fees;[5] *Blackwell v. Skywest Airlines, Inc.*, No. 06-0307, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) (California wage and hour claims preempted by ADA).

For these reasons, this Court concludes that *Mendonca* is still the governing law of this Circuit, and controls the application of the ADA preemption provision in this case. The Court will now turn to each of Plaintiffs' claims.

#### C.      Plaintiffs' First and Fifth Claims for Wages and Reimbursements

---

[5] The *Travers* court, in a very brief order, concluded that contrary to *Rowe*, the district court in *DiFiore* focused on the purpose, rather than the effect of the tips law. However, *Rowe* did not establish a sweeping principle that a statute's objective is irrelevant.

**Exhibit 1**

EXHIBIT - A, PAGE 10
PAGE 13

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 16 of 57   Page ID #:1537
Case 2:11-cv-07284-JHN-JW   Document 34-1   Filed 05/30/13   Page 16 of 66   Page ID #:891
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/11/2009   Page 11 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
|---|---|
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

Plaintiffs' first claim is for failure to pay proper overtime compensation, and for failure to pay certain class members for tasks performed "off the clock," such as traveling from the parking lot to the tarmac and working during lunch breaks. Third Amended Complaint 07-7181 ("TAC 1") ¶¶ 24-26; Third Amended Complaint 07-7184 ("TAC 4") ¶¶ 24-26.[6] *See* Cal. Labor Code §§ 201, 218.5, 1194, 1199. Plaintiffs' fifth claim is for reimbursements for safety equipment that EAGLE's workers purchased to perform their duties. TAC 1 ¶¶ 40-43. *See* Cal. Labor Code § 2802 ("An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."). Defendant contends that the ADA preempts these claims because complying with California's wage and compensation laws would have a "significant effect on prices."

Plaintiffs' wage claims fall squarely within the holding of *Mendonca*. Like the prevailing wage law at issue in that case, Plaintiffs' claims go to whether an employer compensated its employees at the legally required rate. Similarly, Plaintiffs' reimbursements claims go to whether Plaintiffs were properly compensated for expenditures they made "in direct consequence of the discharge of [their] duties." Cal. Labor Code § 2802(a). Under *Mendonca*, the ADA does not preempt these types of claims.

Even if *Mendonca* were not directly on point, this Court would still deny Defendant's motion for summary judgment because there are genuine issues of material fact as to whether compliance with California's employee compensation laws would actually result in "significant effects" on the prices EAGLE charges the airlines, or on the prices charged by the airlines EAGLE services. As to the overtime claim, Defendants avers — without *any* citation to the record or Statement of Undisputed Facts — that if California's laws apply it could be liable for "approximately $443,310 in past damages" and that these increased costs would "dramatically reduce, and in some stations, eliminate EAGLE's ability to operate profitably." Mot. at 18; Reply at 9-10. But without any contextual facts — such as EAGLE's profit margin, its ability to cut costs in other areas,

---

[6] From this point on, the Court will cite only TAC 1, unless the claims in the consolidated cases differ significantly.

**Exhibit 1**

EXHIBIT - A, PAGE 11
PAGE 14

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 17 of 57   Page ID #:1538
Case 2:11-cv-07284-JHN-JW   Document 34-1   Filed 05/30/13   Page 17 of 66   Page ID #:879
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/11/2009   Page 12 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

or its ability to hold prices steady despite higher labor costs — this Court cannot conclude that no reasonable juror would be unpersuaded by EAGLE's naked assertion of price effects.[7]  Cf. *Air Transport Ass'n of Am. v. City & County of S.F.*, 266 F.3d 1064, 1074 (9th Cir. 2001) ("Indeed, the costs of providing the domestic partner employment benefits at issue here—the only costs the Airlines complained about—are a small, if not inconsequential, fraction of the Airlines' costs of flying through SFO.").  Moreover, the only specific record evidence regarding profitability — which EAGLE failed to cite in its briefs — is wildly inconsistent.  *Compare* Parkin Depo. 12:9-17 (EAGLE's profits in 2008 were approximately $3.6 million) *with* Bauer Depo. (in 2008 EAGLE operated at a loss).[8]  And as to the effect of compliance on the prices charged by airlines — the only effect that is probably relevant under the ADA preemption provision — Defendant cites no evidence whatsoever.

As to the "off the clock" and reimbursement claims, the record "evidence" — which EAGLE also fails to cite in its briefs — is similarly lacking.  *See* Bauer Decl. ¶¶ 50-54; Parkin Decl. ¶¶ 50-54.  Again, EAGLE cites no evidence of the effect on the airlines' prices.  And even if EAGLE had provided additional evidence showing the

---

[7] EAGLE's briefs do not cite any particular part of the record that would establish a "significant effect" on prices.  Its reply brief makes only a passing mention to the declarations of Messrs. Bauer and Parkin, and the Court took the extraordinary step of combing through the declarations itself in search of evidence.  Bauer and Parkin — whose declarations are identical in several respects — discuss the basis for concluding that there would be an increase in costs but do not provide sufficient evidence to establish a significant effect on prices.  *See, e.g.*, Bauer Decl. ¶¶ 48-49 ("The increased costs associated with classifying Ramp Agent Supervisors as nonexempt would dramatically reduce, and in some stations, eliminate, EAGLE's ability to operate profitably."); Parkin Decl. ¶¶ 48-49 (same).

[8] In its "Reply to the SGI," EAGLE lamely explains that "[t]he declarants' testimony regarding total revenues at the time of deposition were estimations.  The declarations did not refer to overall revenues, and the declarants did not have EAGLE's balance sheets in front of them."

## Exhibit 1

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 18 of 57   Page ID #:1539
Case 2:11-cv-07284-BRO-VBK   Document 24-1   Filed 05/13/13   Page 18 of 629   Page ID #880
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/11/2009   Page 13 of 17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

extent to which the alleged cost increases would affect prices, it is questionable whether such evidence would compel preemption, given that in *Mendonca* the carriers alleged price increases of *25 percent*.

The Court therefore finds that the ADA does not preempt Plaintiffs' first or fifth claims.

**D.    Plaintiffs' Second Claim for Meal and Rest Breaks**

Plaintiffs' second claim is that Defendant failed to provide statutorily required meal and rest periods at the required times, or compensation for days in which no rest periods were provided.  Cal. Labor Code §§ 226.7, 512; IWC Wage Order 9, ¶¶ 11-12.[9] Defendant asserts that complying with these requirements would significantly affect its ability to quickly and safely marshal planes in and out of gates and would delay flights, and would hinder its ability to follow federal requirements that it monitor and prevent access to baggage, aircraft, and the tarmac.  Defendant also asserts that hiring more employees to avoid these consequences of complying with California law would have a "significant effect on prices."

Like the prevailing wage claim at issue in *Mendonca,* Plaintiffs' claim for statutorily-required meal and rest breaks is fundamentally a claim about working conditions that will affect Defendant's labor costs if EAGLE hires more workers in order to comply and maintain its current level of service.  And like wage regulation, regulation of employment labor standards has long been an area of state concern.  *See Hawaiian Airlines, Inc.*, 512 U.S. at 252; *Fort Halifax Packing Co., Inc.*, 482 U.S. at 21.

---

[9] Defendant makes much of the possibility that California law requires employees to provide a 30 minute meal period before the employee has worked more than five hours, but acknowledges that a California Court of Appeal recently held that the statute does not require the period to be provided at a particular time in the employee's workday. *See Brinker Rest. Corp. v. Superior Court*, 165 Cal. App. 4th 25 (Ct. App. 2008).  That case is currently on appeal to the California Supreme Court.

Exhibit 1

EXHIBIT - A, PAGE 13
PAGE 16

Case 2:13-cv-02621-BRO-VBK Document 40 Filed 06/24/13 Page 19 of 57 Page ID #:1540
Case 2:11-cv-02254-RHO-VBK Document 34-1 Filed 05/30/13 Page 14 of 62 Page ID #:881
Case 2:07-cv-07181-A..M-VBK Document 63 Filed 09/11 2009 Page 14 of 17

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | September 11, 2009 |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | |

Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.
TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.



The similarity between Plaintiffs' rest period claim and *Mendonca's* wage-related claims is even more apparent when one considers that in lieu of providing breaks, an employer may compensate an employee for missed breaks. *See* Cal. Labor Code § 226.7(b) ("If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.")

But again, it is important to stress that even if *Mendonca* did not apply, this Court on summary judgment would reject preemption of this claim because there are genuine issues of material fact. Most importantly, Defendant's "evidence" that hiring more employees to comply with both state and federal regulations would significantly increase prices is based solely on the speculation of Mr. Trujillo, one of the named plaintiffs, that eleven more workers would be required to comply. But there is no evidence that Mr. Trujillo, who is apparently a low-level employee, is qualified to make an accurate estimate. Defendant also calculates that it would cost over $191,625 annually if it paid additional compensation for missed breaks, but again fails to provide the contextual facts that would allow a reasonable trier of fact to evaluate this claim. Defendant's assertions as to the feasibility of compliance are also dubious in light of the fact that its employee manual provides for *longer* rest breaks than California law requires. *Cf. Air Transport Ass'n*, 266 F.3d at 1075 (fact that airlines had already begun complying with allegedly preempted statute even though not obligated to do so "further evidences that the costs of providing these benefits are not enough to compel the Airlines to change their routes and services"). And as above, Defendant has not presented any evidence on how hiring more employees to avoid service disruptions would affect the prices airlines charge consumers.

Defendant relies heavily on a recent district court order finding that ADA preempted claims brought under California's meal and rest break statutes, *See Blackwell v. Skywest Airlines, Inc.*, No. 06-0307, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008). But *Blackwell* neither cited nor discussed *Mendonca*. Moreover, the record in *Blackwell* is distinguishable from the record in this case. *Blackwell* was brought by a Skywest employee who alleged that Skywest — a defendant that directly provided airline service (as opposed to EAGLE, which only handles ground operations) — failed to provide meal periods or paid rest periods. Unlike EAGLE, Skywest presented "robust and

Exhibit 1

EXHIBIT - A, PAGE 14
PAGE 17

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 20 of 57   Page ID #:1541
Case 2:11-cv-07284-JHN   Document 34-1   Filed 05/30/13   Page 20 of 66   Page ID #:882
Case 2:07-cv-07181-AHM-VBK   Document 63   Filed 09/11/2009   Page 15 of 17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 07-7181 AHM (VBKx)<br>CV 07-7184 AHM (VBKx) | Date | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al.<br>TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

uncontroverted" evidence that high labor costs had led Skywest to discontinue services on routes to 16 stations across 11 states, that compliance would likely cause smaller communities to lose access to air transportation, that it would cost over $3,250,000 in additional annual labor costs if Skywest complied with California law, and that to retain profitability Skywest would have to pass labor costs on to the consumer. *Id.* at *18-19. There is no such record of price and service effects in this case.

### E.   Plaintiffs' Third and Fourth Claims for Waiting Time Penalties and Improper Paychecks

Plaintiffs' third claim is for failure to pay wages due at termination. *See* Cal. Labor Code §§ 202-03. Plaintiffs' fourth claim is for failure to provide properly itemized employee wage statements. *See* Cal. Labor Code § 226. Defendant points out that these claims are "bootstrapped" to the first and second claims, and if those claims are preempted, these are too. The converse is also true, and the Court thus finds that the ADA does not preempt these claims.

### F.   Plaintiffs' Sixth Claim (Unfair Competition Law)

Plaintiffs' sixth claim alleges that the above-discussed violations of California's Labor Code constitute unlawful activity prohibited by California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200. Defendant asserts that it is "well-settled" that a claim for violation of California's UCL is preempted by the ADA. But Defendant cites no authority establishing that proposition.

In *American Airlines v. Wolens*, 513 U.S. 219 (1995), the Supreme Court held that an Illinois statute similar to the UCL was preempted by the ADA when it was applied to regulate frequent flyer programs. The Supreme Court characterized the act in that context as "a means to guide and police the marketing practices of the airlines," and found the plaintiffs' *claims* (not the entire statute) preempted because the ADA left largely to the airlines "the selection and design of marketing mechanisms." *Id.* at 228. But in this case the UCL is not being used to regulate marketing mechanisms. Similarly, in *Morales v. Trans World Airlines, Inc.*, the Supreme Court held that the ADA

| | | |
|---|---|---|
| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 15 of 17 |

## Exhibit 1

Case 2:13-cv-02621-BRO-VBK  Document 40  Filed 06/24/13  Page 21 of 57  Page ID #:1542
Case 2:11-cv-07264-JHN-JW  Document 34-1  Filed 05/30/13  Page 21 of 66  Page ID #:883
Case 2:07-cv-07181-A   M-VBK  Document 63  Filed 09/   2009  Page 16 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |

| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |
|---|---|
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. |

preempted "States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." 504 U.S. 374, 378 (1992); *see also id.* at 391 ("We hold that the fare advertising provisions of the NAAG guidelines are pre-empted by the ADA . . . ."). Again, the Supreme Court did not find preempted *all* claims brought under consumer protection statutes, and in this case Plaintiffs' claims do not address airline advertising.

The other cases cited by Defendant are neither binding nor persuasive. In *Fitz-Gerald v. Skywest Airlines, Inc.*, the plaintiffs brought several claims under California's labor and employment laws, and a claim for relief under the UCL. 155 Cal. App.4th at 415. (The California Court of Appeal opinion did not describe the basis for the UCL claim, so it is not even clear whether the claim was based on the labor law claims.) *Fitz-Gerald* relied on *Morales* and *Wolens* to hold that the ADA preempted the UCL claims. But it then went on to say, "Skywest, however, cites no authority that the ADA preempts actions to enforce state minimum wage laws or state laws governing meal/rest breaks." *Id.* at 423. Given that the *Fitz-Gerald* court was not persuaded that the ADA preempts wage and rest break claims, and assuming that the UCL claim was based on those claims, the basis for the court's preemption holding is puzzling. *Blackwell v. Skywest Airlines, Inc.* relied on *Fitz-Gerald, Morales,* and *Wolens* to find plaintiff's UCL claim preempted, but provided no analysis of those cases and their application to a UCL claim based on wage and rest break violations. 2008 WL 5103195, at *20. The other cases cited by Defendant are out-of-circuit decisions and do not address California's UCL. *See In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 315-16 (E.D.N.Y. 2005); *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005).

Because Plaintiffs' UCL claim is based on violations of state law that the Court finds are not preempted by the ADA, the Court finds that the UCL claim is also not preempted.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the ADA does not preempt

---

## Exhibit 1

EXHIBIT - A, PAGE 16
PAGE 19

Case 2:13-cv-02621-BRO-VBK   Document 40   Filed 06/24/13   Page 22 of 57   Page ID #:1543
Case 2:13-cv-02621-BRO-VBK   Document 24-1   Filed 05/30/13   Page 22 of 66   Page ID
Case 2:11-cv-07284-JHN   JW   Document 34-1   Filed 01/25   Page 17 of 29   Page ID
#:884
Case 2:07-cv-07181-AH .-VBK   Document 63   Filed 09/1 .009   Page 17 of 17

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-7181 AHM (VBKx) | Date | |
|---|---|---|---|
| | CV 07-7184 AHM (VBKx) | | September 11, 2009 |
| Title | INIGUEZ v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |
| | TRUJILLO v. EVERGREEN AVIATION GROUND LOGISTICS ENTER., INC., et al. | | |

Plaintiffs' claims, and DENIES Defendant's motions for summary judgment.[10]

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

Initials of Preparer _____ : _____
                              se

_____

[10] Case No. CV 07-7181, Docket No. 30; Case No. CV 07-7184, Docket No. 29.

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 17 of 17

## Exhibit 1

EXHIBIT - A, PAGE 17
PAGE 20



*7340850*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

**ENDORSED FILED**
ALAMEDA COUNTY

SEP 1 1 2009

CLERK OF THE SUPERIOR COURT
By E. Opelski-Erickson, Deputy

| | |
|---|---|
| RUSSELL KASTANOS, et al, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL CONCRETE SUPPLY CO., et al, <br><br> Defendants. | No. HG07-319366 <br><br> ORDER (1) DENYING MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT AND (2) FINDING NO FEDERAL PREEMPTION . <br><br> Date:    September 10, 2009 <br> Time:    3:00 p.m. <br> Dept.:   17 |

The motion of Defendants for summary judgment in Kastanos, McLaughlin, and Huddle came on for hearing September 10, 2009, in Department 17 of this Court, the Honorable Steven A. Brick presiding.  Counsel appeared on behalf of Plaintiffs and on behalf of Defendant. After consideration of the competent portions of the evidence submitted by the parties, as well as the briefing and argument the Court rules as follows: The motions of Defendant for summary judgment in Kastanos, McLaughlin, and Huddle are DENIED.

**FACTUAL BACKGROUND**

This is a class action by drivers of cement trucks ("Drivers") who are or were employed by Central Concrete.  The Drivers are non-exempt employees who are entitled to benefits under the California Labor Code.  The Court has certified a class to prosecute the following causes of action: (1) meal period claims based on the Labor Code § 226.7(a) and Wage Order # 4-2001 (Cal. Code Regs tit. 8 § 11010(11)(A).); (2) rest break claims based on the Labor Code §

EXHIBIT - A, PAGE 18
PAGE 21

226.7(a) and Wage Order # 4-2001 (Cal. Code Regs tit. 8 § 11010(12)(A)); (3) Labor Code § 226 claims asserting that Central Concrete did not provide accurate wage statements; (4) Labor Code § 203 claims asserting that Central Concrete is liable for penalties for not paying proper wages in full on termination; and (5) UCL claims that borrow from the other claims.  Trial on these claims is set for May 24, 2010.

Central Concrete operates 22 batch plants in Northern California and dispatches the Drivers from those yards to deliver ready mix cement to construction projects in California. DUF # 3-4.  When dispatched, the Drivers must fill their trucks with cement and deliver the cement promptly.   DUF # 9, 12. Cement is a perishable commodity and will harden and turn into concrete after a period of time. DUF # 12-15.   There are triable issues of fact regarding whether Defendant can provide flexible services to its customers while also complying with California's laws regarding meal periods and rest breaks.  Defendant estimates that compliance with California law is expensive and adds millions of dollars to its annual costs, which in turn affect the prices it must charge its customers.  DUF # 40, 47.

There is no evidence that Central Concrete delivers concrete to projects outside California. PUF #64, 97. The law on meal periods and rest breaks is different in Idaho and Utah. DUF # 49-52.  There is no evidence that Central Concrete delivers concrete to projects in Idaho or Utah.

**PROCEDURAL ISSUE.**

Defendant can assert the affirmative defense of preemption.  This defense cannot be waived.  *People v. Torch Energy* (2002) 102 Cal.App.4th 181.  Order of 9/1/09.

**LEGAL ANALYISIS.**

Preemption may occur in three situations: (1) where the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves no room for supplementary state

1  regulation, or (3) where the federal and state laws actually conflict." *Tidewater Marine Western,*

2  *Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 567; *Californians For Safe and Competitive Dump*

3  *Truck Transp. v. Mendonca* (N.D. Cal., 1997) 957 F.Supp. 1121, 1124 (*CSCDTT*).  In this

4  motion, Defendants rely entirely on express preemption.  Neither Plaintiffs nor Defendant

5  address the threshold issue of whether Defendant is engaged in interstate commerce.

6       An analysis of whether a state law is preempted begins with the presumption that

7  Congress does not intend to supplant state law.  It is never assumed lightly that Congress has

8  derogated state regulation.  When addressing preemption claims, "the question whether a certain

9  state action is pre-empted by federal law is one of congressional intent. The purpose of Congress

10  is the ultimate touchstone." *CSCDTT*, 957 F.Supp. at 1124; *Smith v. Wells Fargo Bank, N.A.*

11  (2005) 135 Cal.App.4th 1463, 1475-1476.  Regulation of the terms and conditions of

12  employment is a traditional state function, so the Court applies the presumption against

13  preemption. *CSCDTT*, 957 F.Supp. at 1125.

14       The Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C.

15  § 14501(c), states, "a State, … may not enact or enforce a law, regulation, or other provision

16  having the force and effect of law related to a price, route, or service of any motor carrier … or

17  any motor private carrier, broker, or freight forwarder with respect to the transportation of

18  property."  The FAAAA has broad preemptive force similar to that in the Airline Deregulation

19  Act and ERISA.  The FAAAA's legislative history suggests that Congress intended to remove

20  state regulations that "imposed an unreasonable burden on interstate commerce, impeded the free

21  flow of trade, traffic, and transportation of interstate commerce, and placed an unreasonable cost

22  on American consumers." (Def RJN , Exh C.)

23       The intent of Congress regarding the preemptive scope of the FAAAA as applied to state

24  regulation of wages and hours is stated in *CSCDTT*, 957 F.Supp. at 1126, as follows:

25       the legislative history of section 14501 does not establish that it was Congress's
     "clear and manifest" intent to preempt state wage regulation; rather, it appears that

26       Congress intended to preempt state law that more directly affects motor carrier

3

prices and rates, such as entry controls, tariffs charged for transportation services and similar regulation. In discussing state regulatory practices, the legislation speaks to regulatory schemes typically reserved to state transportation or commercial agencies, not regulations that generally govern many employers, including motor carriers.

The Court cannot conclude that Congress specifically intended that the FAAAA would preempt state wage and hour laws.

The text of section 14501 includes the phrase "relates to," which has been construed to mean "having a "connection with or reference to" the object of the federal statute" and given a very broad meaning. *CSCDTT*, at 1127-1128. "Relate to" does, however, have limits, as some state action may affect motor transport in too tenuous, remote, or peripheral a manner to have preemptive effect. *CSCDTT*, at 1128.

In this case, the relationship between section 14501 and California's Labor Code as applied to meal and rest breaks is attenuated. In *Fitz-Gerald v. SkyWest Airlines, Inc.* (2007) 155 Cal.App.4th 411, 423, the Court examined a similar preemption provision in the Airline Deregulation Act of 1978 ("ADA") and stated:

> SkyWest, however, cites no authority that the ADA preempts actions to enforce state minimum wage laws or state laws governing meal/rest breaks. Although the ADA has been broadly interpreted as preempting state "enforcement actions having a connection with, or reflect to [sic] airline 'rates, routes or services,' " it has its limits. [Fn 7] [Cite] If the rule was otherwise, "any string of contingencies is sufficient to establish a connection with price, route, or service, there will be no end to ADA preemption. [Citations.]" [Citation]
>
> FN 7. SkyWest argues that application of state minimum wage law will result in higher fares, fewer routes, and less service, but the connection is tenuous. A state or local law is "related to" a price route or service if it has " 'a connection with, or reference to' " a price, route, or service. ... "Airlines' 'rates' and 'routes' generally refer to the point-to-point transport of passengers. 'Rates' indicates price; 'routes' refers to courses of travel. It therefore follows that 'service,' when juxtaposed to 'rates' and 'routes,' refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, 'This airline provides service from Tucson to New York twice a day.') To interpret 'service' more broadly is to ignore the context of its use; and,

EXHIBIT - A, PAGE 21
PAGE 24

it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended."

Defendant asserts that the interpretation of "relating to" in the FAAAA has recently been expanded under *Rowe v. New Hampshire Motor Transport Ass'n* (2008) ___ U.S. ___, 128 S.Ct. 989.  This is not correct.  *Rowe* repeats the same language cited in earlier cases that the FAAAA "might not pre-empt state laws that affect fares in only a "tenuous, remote, or peripheral ... manner." [citation]."  128 S.Ct. at 995.  Therefore, the Court returns to the issue of whether Defendants have demonstrated with undisputed facts that the state regulation of meal breaks and rest periods will have a "significant" and adverse "impact" in respect to the FAAAA's ability to achieve its pre-emption-related objectives.  128 S.Ct. at 995.

Defendant's evidence does not establish that the indirect effect of California's regulation of meal breaks and rest periods on Defendant's labor costs has a "significant" and adverse "impact" on the objectives of Congress.  California's regulation of meal breaks and rest periods will not require Defendant to offer any services that it does not now provide or freeze into place any services that Defendant might prefer to discontinue in the future.  Similarly, California's regulation of meal breaks and rest periods does not directly set the prices that Defendant can charge for its products and services.

Defendant has presented evidence that California's regulation of meal breaks and rest periods makes the cost of business higher here than in Idaho or Utah, but has not demonstrated that it significantly and adversely impacts any interstate commerce in which Defendant might or might not engage.

The above analysis tracks the analysis of the federal trial court in *Californians For Safe and Competitive Dump Truck Transp. v. Mendonca* (N.D. Cal., 1997) 957 F.Supp. 1121. Defendant would have the Court track the analysis of the federal trial court in *Blackwell v. SkyWest Airlines, Inc.* (S.D. Cal., 2008) 2008 WL 5103195, which found that the Airline Deregulation Act of 1978, preempted California's regulation of meal breaks and rest periods as

applied to an airline's customer service representatives.  Neither federal trial court decision is binding on this Court, although *CSCDTT* arguably has greater value as precedent given that it is a published decision.  This Court finds the analysis in *CSCDDT* to be more persuasive.  The preemption analysis in *Blackwell* rested on the Court's conclusion that the application of state wage and hour claims to Defendant would result in increased costs to consumers, lower ticket sales, unprofitable regional stations, and the discontinuance of service on certain routes.  This conclusion is directly contrary to *Fitz-Gerald v. SkyWest Airlines, Inc.* (2007) 155 Cal.App.4th 411, 423, and its observation that if "any string of contingencies is sufficient to establish a connection with price, route, or service, there will be no end to ADA preemption."  Contrary to the direct connection that the Court found in *Blackwell*, in *Fitz-Gerald*, the Court stated, "SkyWest argues that application of state minimum wage law will result in higher fares, fewer routes, and less service, but the connection is tenuous." *Id.* 155 Cal.App.4th at 423 fn 7,

The motion of Central Concrete for summary adjudication on the California meal and rest break claim is DENIED.

**EVIDENCE.**

The Court has considered all the declarations submitted, as well as the exhibits attached thereto.  The Court's consideration of the evidence is limited to the motion for summary judgment and should not be construed as an indication of admissibility in future motions or at trial.

**THE COURT DOES NOT RESOLVE THE ISSUE OF FEDERAL PREEMPTION.**

The denial of Defendant's motion for summary judgment means only that there is a triable issue of fact and does not compel the conclusion that the Plaintiff will prevail on the issue presented in the motion.  A Plaintiff must file a cross-motion for summary judgment to obtain a

EXHIBIT - A, PAGE 23
PAGE 26

1   decision that an affirmative defense has no merit. *Sierra Craft, Inc. v. Magnum Enterprises, Inc.*

2   (1998) 64 Cal.App.4th 1252.

3       The Court's tentative decision stated that the Court could determine on the law as the

4   Court interprets it and the facts presented by Defendant that there is no preemption under the

5   FAAAA. Based on that factual premise, the Court's tentative decision stated that the Court

6   cannot identify a good reason to either require Plaintiffs to file a motion for summary

7   adjudication on the affirmative defense or to submit the issue to a jury to resolve factual issues

8   and that if Defendant had no procedural objection, the Court was inclined to summarily

9   adjudicate the affirmative defense of federal preemption. *Bacon v. Southern Cal. Edison Co.*

10  (1997) 53 Cal.App.4th 854, 860 (Court may resolve unbriefed issues after giving the parties an

11  opportunity to the address the topic). At the hearing Defendant stated that it needed to consider

12  the matter further. Therefore, the Court does not grant summary adjudication in favor of

13  Plaintiffs on the affirmative defense of federal preemption.

14

15  **FURTHER PROCEEDINGS**

16      The next case management conference is set for 1/27/2010, at 3:00 pm in Dept 17 and

17  trial is set for 5/24/10.

18      Before filing CMC statements related to the CMC on 1/27/2010 the parties are to meet

19  and confer about whether the Court can grant summary adjudication in favor of Plaintiffs on the

20  affirmative defense of federal preemption.

21      Before filing CMC statements the parties are also to meet and confer about whether the

22  three consolidated cases should remain consolidated for trial. Order of 3/3/08 (consolidating

23  cases for pre-trial purposes). If the parties cannot agree on consolidation, then the party seeking

24  to leave the cases consolidated for trial should file a motion to be heard on 1/27/2010.

25      Plaintiffs must present a trial plan that demonstrates that there can be an effective class

26  trial of common issues and any individualized issues that will provide due process to the absent

1   class members and the defendant while respecting the time of the jury.   The trial plan must

2   identify the common factual and legal issues and identify the specific documents and witnesses

3   that Plaintiffs will present to prove the common factual issues.  For each witness, Plaintiffs must

4   describe their testimony in 3-4 sentences and estimate the hours of direct testimony.  The trial

5   plan is not a substitute for Local Rule 3.35 and will not tie the Plaintiffs to the precise witnesses

6   and documents that they can present at trial.  The trial plan must, however, give the Court a

7   factual basis for determining whether the trial will be manageable and for determining the length

8   of the trial.  The trial plan will serve as the basis for any defense motion to de-certify the class

9   based on manageability concerns.  Plaintiffs must serve the trial plan on Defendants on or before

10   1/20/2010.

Dated: September _11_, 2009

_Steven A. Brick_ (signature)

Steven A. Brick
Judge of the Superior Court

8

Case Title/No.:   **KASTANOS VS. CENTRAL CONCRETE SUPPLY CO**
**HG07319366**

## CLERK'S CERTIFICATE OF MAILING
### (CCP §1013a)

I certify that the following is true and correct:

I am a Deputy Clerk employed by the Alameda County Superior Court.  I am over the age of 18 years.  My business address is 1221 Oak Street, Oakland, California.   I served this ORDER (1) DENYING MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT AND (2) FINDING NO FEDERAL PREEMPTION by placing copies in envelopes addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Oakland, California, following standard court practices.

Harvey Sohnen
Patricia M. Kelly
LAW OFFICES OF SOHNEN & KELLY
2 Theater Square, Suite 230
Orinda, CA 94563

Wendy York
Michael Ahmad
YORK LAW CORPORATION
1111 Exposition Boulevard, Building 500
Sacramento, CA 95815

Joseph Clapp
HERRON & HERRON
18360 Sonoma Highway
Sonoma, CA 95476-4328

Michael Carver
Michelle M. Lunde
LAW OFFICES OF MICHAEL L. CARVER
1600 Humboldt Road, Suite 3
Chico, CA 95928

Richard N. Hill
Ellen M. Bronchetti
Gilbert J. Tsai
Suissu N. Raafat
LITTLER MENDELSON
650 California Street, 20th Floor
San Francisco, CA 94108-2693

Dated: September 11, 2009

Executive Officer/Clerk of the Superior Court

By _____
   *Elizabeth Erickson, Deputy Clerk*

EXHIBIT - A, PAGE 26
PAGE 29

| | |
|---|---|
| 1 | Harvey Sohnen (SBN 62850) |
| | Patricia M. Kelly (SBN 99837) |
| 2 | LAW OFFICES OF SOHNEN & KELLY |
| | 2 Theatre Square, Suite 230 |
| 3 | Orinda, California 94563-3346 |
| | Telephone: (925) 258-9300 |
| 4 | Facsimile: (925) 258-9315 |
| | netlaw@pacbell.net |
| 5 | |

ENDORSED
**F I L E D**
San Francisco County Superior Court

FEB 19 *2010*

RECD FEB 11 2010

GORDON PARK-LI, Clerk
BY: _____ BETH WILBERT
Deputy Clerk

Attorneys for Plaintiffs RICARDO LOA,
LAWRENCE QUINN, ROBERT FRY,
ADOLFO SANTANA and VICTOR SHAVER,
RANDY SIZEMORE, and RON HUCKABY
[Additional Counsel after Signature Line]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 3.550) | J.C.C.P. CJC-07-004520 |
| **CEMEX WAGE CASES** | **CLASS ACTION** |
| Included actions: | |
| Loa, et al., v. Cemex, Inc. | Judge: Richard A. Kramer |
| San Francisco Co. Superior Court | Dept. 304 |
| Case No. CGC07-461740 | |
| Filing Date: 3-27-2007 | **ORDER ON DEFENDANTS' MOTION** |
| | **FOR SUMMARY JUDGMENT OR, IN** |
| Grigorian v. Cemex, Inc. | **THE ALTERNATIVE, SUMMARY** |
| Los Angeles Co. Superior Court | **ADJUDICATION** |
| Case No. BC375447 | |
| Filing Date: 8-6-2007 | |
| Gonzalez v. Cemex, Inc. | |
| Los Angeles Co. Superior Court | |
| Case No. BC376618 | |
| Filing Date: 8-27-2007 | |
| Price, et al. v. Cemex, Inc. | |
| Los Angeles Co. Superior Court | |
| Case No. BC 378177 | |
| Filing Date: 9-26-2007 | |

Order on Defendants' Motion for Summary Judgment

1

JCCP No. CJC-07-004520
2226134.3

**Exhibit 3**

EXHIBIT - A, PAGE 27
PAGE 30

1   Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication

2   of Issues, came on for hearing on February 5, 2010, in Department 304 of this Court, the

3   Honorable Richard A. Kramer, presiding. Counsel appeared on behalf of Plaintiffs and on behalf

4   of Defendants. After consideration of the briefing and argument by counsel the Court rules that
    the Motion is DENIED.

5       The Court finds as a matter of law and without the need to consider the factual evidence

6   presented, that Congress did not intend to preempt, under the Federal Aviation Administration

7   Authorization Act, 49 U.S.C. § 14501(c), California's meal and rest period regulations as provided

8   for in California Labor Code Sections 226.7 and 512, and in Wage Orders 1 and 9. Therefore
    summary adjudication is DENIED as to the First Cause of Action (Labor Code Sections 226.7 and

9   512 and Wage Orders 1(11) and 9(11) (meal periods)) and Second Cause of Action (Labor Code

10  Section 226.7 and Wage Orders 1(12) and 9(12) (rest periods)), and the motion for summary

11  adjudication also is DENIED as to the Third Cause of Action (Labor Code Sections 201-203),

12  Fourth Cause of Action (Labor Code Section 226), Fifth Cause of Action (Private Attorney

13  General Act – California Labor Code §2698 *et seq.*), and Sixth Cause of Action

14  (Unfair/Unlawful/Fraudulent Business Practices – California Business and Professions Code
    Sections 17200 *et seq.*), inasmuch as the claims therein are derivative of the First and Second

15  Causes of Action.

16  Dated: __FEB 1 8 2010__                        __RICHARD A. KRAMER__

17

18                                                 HONORABLE RICHARD A. KRAMER
                                                   JUDGE OF THE SUPERIOR COURT

19

20  Approved as to Form:

21  HANSON BRIDGETT LLP

22  By: _____
        DOROTHY S. LIU

23

24  Additional Counsel (on following page):

                                              2

Order on Defendants' Motion for Summary Judgment                    JCCP No. CJC-07-004520
                                                                    2226134.3


## Exhibit 3

TOTAL P.01

ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman (State Bar No. 229832)
1180 South Beverly Drive, Suite 600
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

Attorneys for Jack Morrison

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

OCT 0 1 2009

LARAYNE CLEEK, CLERK

BY: _____

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF TULARE

### (UNLIMITED JURISDICTION)

| | |
|---|---|
| JACK MORRISON, individually, and on behalf of all others similarly situated, | Case No.: 228016 |
| Plaintiff, | **NOTICE OF ENTRY OF ORDER** |
| v. | Judge: Hon. Lloyd L. Hicks<br>Complaint Filed: May 9, 2008 |
| KNIGHT TRANSPORTATION, INC., d/b/a ARIZONA KNIGHT TRANSPORTATION, INC., | BY FAX |
| Defendant. | |

NOTICE IS HEREBY GIVEN that on September 28, 2009, the above entitled Court entered its Order Denying Knight Transportation, Inc.'s Motion for Summary Judgment and Alternative Motion for Summary Adjudication.

Dated: October 1, 2009

ACKERMANN & TILAJEF, P.C.
1180 South Beverly Drive, Suite 600
Los Angeles, California 90035

By: _____

Craig J. Ackermann (State Bar No. 229832)
Attorney for the Plaintiff And The Class

Notice of Entry of Order

TOTAL P.01

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

SEP 2 8 2009

LARAYNE CLERK, CLERK
BY:_____

1  ACKERMANN & TILAJEF, P.C.
   Craig J. Ackermann (State Bar No. 229832)
2  1180 S. Beverly Drive, Suite 600
   Los Angeles, CA 90035
3  Telephone: (310) 277-0614
   Facsimile: (310) 277-0635
4
5  Attorneys for Plaintiff Jack Morrison
6
7            SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                    FOR THE COUNTY OF TULARE
                      (UNLIMITED JURISDICTION)
9
10 JACK MORRISON, individually and on        Case No. 228016
   behalf of all others similarly situated
11                                           [PROPOSED] ORDER DENYING
                 Plaintiff,                  DEFENDANT'S MOTION FOR
12                                           SUMMARY JUDGMENT AND
          v.                                 ALTERNATIVE MOTION FOR
13                                           SUMMARY ADJUDICATION
14 KNIGHT TRANSPORTATION, INC.
   d/b/a ARIZONA KNIGHT                      Date:   September 17, 2009
15 TRANSPORTATION, INC.                      Time:   8:30 AM
                                             Dept.:  10
16               Defendant.                  Judge: Hon. Lloyd Hicks
17                                           Complaint Filed: May 9, 2008
18                           ORDER
19
20        On September 17, 2009 at 8:30 a.m., the Motion for Summary Judgment and the Alternative
21 Motion for Summary Adjudication filed by Defendant Knight Transportation, Inc. ("Defendant")
22 came on for hearing before the Honorable Lloyd Hicks in Department 10 of the above captioned
23 court. On September 15, 2009, the Court issued a Tentative Order Denying Defendant's Motion for
24 Summary Judgment and the Alternative Motion for Summary Adjudication, in response to which
25 Defendant requested oral argument. Oral argument took place as scheduled, Mr. Richard Rahm,
26 Esq. of Littler Mendelson P.C. appearing on behalf of Defendant, and Mr. Craig J. Ackermann, Esq.
27 of Ackermann & Tilajef, P.C. appearing on behalf of Plaintiff. At the conclusion of the hearing, the
28 Court reaffirmed its September 15, 2009 tentative ruling denying Defendant's Motion for Summary

*Order Denying Defendant' Motion for Summary Judgment, Page 1*

Exhibit 6 FIRST LEGAL SUPPORT SERVICES    EXHIBIT - A, PAGE 30
PAGE 33



1
2
3
4
5
6
7
8
9
10
11

FILED

04 JUL -8 PH 2: 19

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12 DUNBAR ARMORED, INC., | Civil No. 04-0602 WQH (WMC) |
| 13          Plaintiff, | |
| 14     v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** [Doc. Nos. 12, 18] |
| 15 JOHN REA, Director of the California Department of Industrial Relations, | |
| 16 BRIDGET BANE, Executive Officer of the California Industrial Welfare | **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** [Doc. No. 6] |
| 17 Commission, and GREG RUPP, Acting Deputy Chief Labor Commissioner of the | |
| 18 California Division of Labor Standards Enforcement, | |
| 19 | |
| 20          Defendants. | |

21
22     Plaintiff Dunbar Armored, Inc. moves for a preliminary injunction. Defendants John Rea
23 and Bridget Bane move to dismiss the complaint for failure to state a claim upon which relief
24 may be granted. On June 15, 2004 the parties appeared before the Honorable William Q. Hayes,
25 United States District Judge, for oral argument on the motions. Having considered the parties'
26 briefs and oral argument, the Court enters the following decision.
27 //
28 //

29

**EXHIBIT 1**

Exhibit 2

*Background*

On March 23, 2004 Plaintiff Dunbar Armored, Inc., a company that provides secure transportation of valuables, filed suit against John Rea, the acting Director of the California Department of Industrial Relations, Bridget Bane, the Executive Officer of the California Industrial Welfare Commission, and Greg Rupp, the acting Deputy Chief Labor Commissioner of the California Division of Labor Standards Enforcement. Plaintiff seeks declaratory and injunctive relief.

Plaintiff is registered as a motor common and contract carrier of property with the United States Department of Transportation ("USDOT"). *Complaint* ¶ 9. Plaintiff operates seventy-six nationwide branches, including six in California. *Id.* The California branches operate armored trucks on about sixty daily routes, servicing about 5,000 customers in the San Diego, Los Angeles and San Francisco areas. *Id.* California has wage and hour regulations applicable to most employees not classified as administrative, executive or professional personnel. *Id.* ¶ 12. The regulations include mandatory meal and rest periods. *Id.* ¶ 2.

In 2003 three former Dunbar employees filed claims with the Department of Labor Standards Enforcement ("DLSE"), contending that Plaintiff had denied them daily meal and rest periods. *Id.* ¶ 13. The claimants sought back pay calculated on the basis of one hour's pay for each denied meal or rest period. *Id.* Plaintiff contests those claims on the ground that its employees fall within the USDOT exemption from California's regulations. *Id.* ¶ 14. The DSLE believes that "California's so-called 'USDOT exemption' from the application of State wage and hour regulations applied only to drivers' total daily work hours, and not to the meal periods, rest periods and related premiums required by the Regulations at issue here." *Id.*

Plaintiff argues that the meal and rest period regulations would "severely alter, impede or frustrate Dunbar's ability to conduct its business of providing high-security transportation services in California." *Id.* ¶ 16. Plaintiff contends that the regulations are unenforceable because (1) they are preempted by the federal Interstate Commerce Commission Termination Act, (2) they violate the Supremacy Clause of the federal Constitution, and/or (3) they violate the Commerce Clause of the federal Constitution. *Id.* ¶ 21. Plaintiff accordingly seeks declaratory

2

04CV0602

Exhibit 2

1  serious questions going to the merits to make them fair grounds for litigation and a balance of

2  hardships tipping decidedly toward the party requesting the preliminary relief." *Walczak v. EPL*

3  *Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999). This standard thus weighs the moving party's

4  likelihood of success against the relative hardship to the parties. *See Sun Microsystems, Inc. v.*

5  *Microsoft Corp.*, 188 F.3d 1115, 1118 (9th Cir. 1999). "These two formulations represent two

6  points on a sliding scale in which the required degree of irreparable harm increases as the

7  probability of success decreases." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th

8  Cir. 2001) (citations omitted). "If the harm that may occur to the moving party is sufficiently

9  serious, it is only necessary that there be a fair chance of success on the merits." *William Inglis*

10  *& Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975).

11  *Discussion*

12  **A.    California's Wage and Hour Regulations**

13      California's Industrial Welfare Commission ("IWC") is vested with broad quasi-

14  legislative rule-making authority to investigate and regulate, through its wage orders, the

15  comfort, health, safety and welfare of California employees. *See generally* Cal. Lab. Code §§

16  1171-1205. Plaintiff's business and employees fall under Wage Order 9-2001, which governs

17  the transportation industry.

18      With respect to meal periods, Wage Order 9 provides:

19          (A) No employer shall employ any person for a work period of more
            than five (5) hours without a meal period of not less than 30 minutes,
20          except that when a work period of not more than six (6) hours will
            complete the day's work the meal period may be waived by mutual
21          consent of the employer and the employee.

22          (B) An employer may not employ an employee for a work period of
            more than ten (10) hours per day without providing the employee a
23          second meal period of not less than 30 minutes, except that if the
            total hours worked is no more than 12 hours, the second meal period
24          may be waived by mutual consent of the employer and the employee
            only if the first meal period was not waived.
25
            (C) Unless the employee is relieved of all duty during a 30 minute
26          meal period, the meal period shall be considered an "on duty" meal
            period and counted as time worked. An "on-duty" meal period shall
27          be permitted only when the nature of the work prevents an employee
            from being relieved of all duty and when by written agreement
28          between the parties an on-the-job paid meal period is agreed to.

4

Exhibit 2

1   *Wage Order 9-2001*, sub. 11. With respect to rest periods, Wage Order 9 provides:

2                **(A)** Every employer shall authorize and permit all employees to take
    rest periods, which insofar as practicable shall be in the middle of
3   each work period. The authorized rest period time shall be based on
    the total hours worked daily at the rate of ten (10) minutes net rest
4   time per four (4) hours or major fraction thereof. However, a rest
    period need not be authorized for employees whose total daily work
5   time is less than three and one-half (3½) hours. Authorized rest
    period time shall be counted as hours worked for which there shall
6   be no deduction from wages.

7                **(B)** If an employer fails to provide an employee a rest period in
    accordance with the applicable provisions of this order, the employer
8   shall pay the employee one (1) hour of pay at the employee's regular
    rate of compensation for each workday that the rest period is not
9   provided.

10  *Wage Order 9-2001* sub. 12. In June 2000, the state legislature enacted Labor Code § 226.7,

11  which sets forth the penalty for employers who fail to comply with Wage Order 9's meal and rest

12  period provisions.

13               If an employer fails to provide an employee with a meal or rest
    period in accordance with an applicable order of the Industrial
14  Welfare Commission, the employer shall pay the employee one
    additional hour of pay at the employee's regular rate of
15  compensation for each work day that the meal period or rest period is
    not provided.

16

17  Cal. Lab. Code § 226.7(b).

18      **B.    Preemption**

19      Plaintiff argues that the Interstate Commerce Commission Termination Act ("ICCTA"),

20  49 U.S.C. § 14501(c),[1] preempts Wage Order 9's meal and rest period regulations ("the

21  Regulations"). Section 14501(c) provides in relevant part: "a State, political subdivision of a

22  State, or political authority of 2 or more States may not enact or enforce a law, regulation, or

23  other provision having the force and effect of law related to a price, route, or service of any

24  motor carrier ... with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

25  _____

26  [1]    "Section 14501(c) was originally enacted and codified at 49 U.S.C. 11501(h) ... by the Federal Aviation
    Administration Authorization Act ... As such, § 11501(h)(1) preempted state and local regulation of any price, route, or
27  service with respect to the transportation of property[.]" *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765,
    772 (2nd Cir. 1999) (citations omitted). One year after its enactment, § 11501(h) was recodified at § 14501(c) by the
28  Interstate Commerce Commission Termination Act of 1995. "In its current incarnation, § 14501(c)(1) continues to preempt
    any state or local law 'related to price, route, or service of any motor carrier ... with respect to the transportation of property.'"
    *Id.* at 773.

Exhibit 2

1    To determine whether a federal statute preempts state law, the "sole task is to ascertain
2  the intent of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280
3  (1987). Federal law preempts state law if (1) Congress expressly so states, (2) Congress enacts
4  comprehensive laws that leave no room for additional state regulation or (3) the state law
5  actually conflicts with the federal law. *Id.* at 280-81; *see also Pacific Merchant Shipping Ass'n*
6  *v. Aubry*, 918 F.2d 1409, 1415 (9th Cir. 1990). "States, however, possess broad authority under
7  their police powers to regulate the employment relationship to protect resident workers." *Id.* at
8  1415-16. Courts must therefore operate under "the assumption that state laws dealing with
9  matters traditionally within a state's police powers are not to be preempted unless Congress's
10  intent to do so is clear and manifest." *Californians for Safe & Competitive Dump Truck Transp.*
11  *v. Mendonca*, 152 F.3d 1184, 1186 (9th Cir. 1998). Plaintiff contends that the ICCTA's express
12  language mandates preemption of the Regulations.
13    Defendants argue that *Mendonca* forecloses Plaintiff's preemption argument. In
14  *Mendonca*, the Ninth Circuit considered whether the Federal Aviation Administration
15  Authorization Act of 1994 ("FAAA Act") preempted California's Prevailing Wage Law
16  ("CPWL"). The FAAA Act's preemption provision was the previous incarnation of § 14501(c).
17  *See supra* at n.1. The CPWL requires public works contractors to pay their workers "not less
18  than the prevailing rate ... for work of a similar character in the locality in which the public work
19  is performed." Cal. Lab. Code § 1771. The plaintiffs, an association of motor carriers and
20  motor carrier enterprises, sought declaratory and injunctive relief against enforcement of the
21  CPWL. The Ninth Circuit discussed the Supreme Court's decision in *California Division of*
22  *Labor Standards Enforcement v. Dillingham Construction*, in which the Court considered
23  whether ERISA preempts the CPWL. Justice Scalia clarified that the ERISA's "relate to"
24  provision -- which mirrors the § 14501(c)'s "relate to" terminology -- "is meant, not to set forth
25  a test for preemption, but rather to identify the field in which ordinary field preemption[2] applies
26  ... applying the 'relate to' provision according to its terms [is] doomed to failure, since ...
27
28      [2]      Field preemption signifies Congress's intent to occupy the entire field of the law in question. The test is
whether Congress has declared its policy with respect to the matter on which the state asserts the right to act. *Mendonca*, 152
F.3d at 1189 n.6 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 236 (1947)).

04CV0602

Exhibit 2

1   everything is related to everything else." *California Div. of Lab. Standards Enforcement v.*

2   *Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 336 (1997) (Scalia, J., concurring). The Ninth

3   Circuit examined the CPWL's legislative history and determined that the CPWL is not related to

4   the plaintiffs' prices, routes and services.

5       [Plaintiffs] contend[] that the FAAA Act preempts CPWL because it
        directly affects, and is therefore related to, the prices, routes, and
6       services of [Plaintiffs'] motor carrier enterprises. [Plaintiffs] argue
        that CPWL increases its prices by 25%, causes it to utilize
7       independent owner-operators, and compels it to re-direct and re-
        route equipment to compensate for lost revenue.
8

9   *Mendonca*, 152 F.3d at 1189. The Ninth Circuit found that the FAAA Act's purpose was to

10  deregulate motor carriers' intrastate prices, routes and services to bring motor carriers in line

11  with the previously federally deregulated air carriers, which had "gained a sizable advantage

12  over their more regulated, ground-based shipping competitors." *Id.* at 1187. However, the court

13  held that the CPWL's effect on the plaintiffs' prices, routes and services was indirect, remote

14  and tenuous. *Id.* "We do not believe that CPWL frustrates the purpose of deregulation by

15  *acutely* interfering with the forces of competition. Nor can it be said, borrowing from Justice

16  Scalia's concurrence in *Dillingham*, that CPWL falls into the 'field of laws' regulating prices,

17  routes or services." *Id.* (citations omitted) (emphasis in original).

18      Plaintiff argues that the ICCTA preempts California's meal and rest period regulations

19  because the Regulations are related to a price, route, or service of its business in that

20  enforcement of the Regulations against Plaintiff would force Plaintiff to increase its operating

21  costs and significantly modify its routes and employee work shifts. "The necessary alterations

22  would require extensive modification of Dunbar's routes and services, so as to eliminate safety

23  and security risks attendant with leaving an armored truck unstaffed or understaffed in mid-

24  route." *Pl.'s Opp'n* at 8. Defendants argue that, just as the prevailing wage law at issue in

25  *Mendonca*, the Regulations are a valid, traditional exercise of California's police power and are

26  not related to a price, route or service of Plaintiff's business. Defendants contend that Plaintiff

27  may require its employees to take on-duty meal and rest periods and instead pay the premium —

28  an additional hour of pay -- set forth in Labor Code § 226.7. By doing so, Defendants assert,

Exhibit 2

1  Plaintiff would not experience any greater interference or economic impact than the motor

2  carrier companies in *Mendonca*, and it would not be required to modify its routes and services.

3  Plaintiff counters that *Mendonca* is inapplicable in that *Mendonca* "turned on the increase in cost

4  resulting from the plaintiffs' *compliance* with the California prevailing wage law ... Here,

5  compliance with the Regulations does not require any increase in wages to Dunbar's

6  crewmembers. It instead requires that they be provided with meal and rest periods." *Pl.'s Opp'n*

7  at 3 (emphasis in original). Plaintiff asserts that paying the Labor Code § 226.7 premium

8  constitutes noncompliance with the Regulations, which are mandatory, such that compliance

9  through payment of a premium is not a viable option. Plaintiff further contends that its only

10  choice under the Regulations is to comply with them by permitting off-duty meal and rest

11  periods, thereby having to change routes and shift lengths rather than risk leaving its armored

12  trucks unattended.

13      The Court agrees that whether the ICCTA preempts the Regulations must be measured by

14  the effect of compliance with the Regulations, not the effect of noncompliance. The Court finds

15  that two viable options for compliance exist: (1) the employer provides off-duty meal and rest

16  periods or (2) the employer obtains the employee's written agreement to waive the off-duty meal

17  periods and pays the employee the premium. The Court disagrees with Defendants' assertion

18  that it is possible for employers to require on-duty meal and rest periods, regardless of whether

19  the employees agree, simply by paying the premium. As written, the Regulations do not support

20  this interpretation — there is no language in the Regulations to provide for this option. Rather,

21  there is discussion about when it is permissible to provide an on-duty meal period by obtaining

22  the employee's written consent. *See Wage Order 9-2001* sub. 11; *Pl.'s Appendix of Selected*

23  *Statutes* Ex. 11. Thus, the question before the Court is whether complying with the Regulations

24  affects Plaintiff's prices, routes and services such that preemption applies.

25      Plaintiff argues that its only option is to provide its employees with off-duty meal and rest

26  periods, which would force it to increase its operating costs significantly and alter its routes and

27  shift lengths, or else cease to do business in California. *See Daniels Decl.* ¶¶ 17, 18, 25, 29, 30.

28  First, the Court finds that Plaintiff has not sufficiently shown that it would have to drastically

8

04CV0602

Exhibit 2

Case 2:11-cv-07484-JHL-JW Document 34-1 06/04/01/Page 43 of 57 Page ID Page 514
Case 2:13-cv-02621-BRO-VBK Document 34-1 Filed 06/04/01/Page 43 of 57 Page 26 Page ID Page 514
#:893

Case 3:04-cv-00602-WQH-WMC    Document 29    Filed 07/08/2004    Page 10 of 13

1 overhaul its operations. For example, the Regulations permit Plaintiff to request that its
2 employees take on-duty meal periods. The Regulations clearly provide that employees may take
3 on-duty meal periods if the employer and employee enter into a revocable written agreement to
4 that effect and the employer pays the premium, and the "nature of the work" makes an off-duty
5 meal impracticable. Plaintiff contends that its employees would not be eligible for on-duty
6 meals because they do not work alone. The "nature of the work" requirement, however, appears
7 to be more flexible than the bright-line rule Plaintiff suggests.

> The factors that should be considered include the type of work, the availability of other employees to provide relief to an employee during a meal period, the potential consequences to the employer if the employee is relieved of all duty, the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break, and whether the work product or process will be destroyed or damaged by relieving the employee of all duty.

13 *Pl.'s Appendix of Selected Statutes* Ex. 11 (DLSE opinion letter, September 2002). *But see id.*
14 Ex. 12 (DLSE opinion letter, November 2003) (the "nature of the work" requirement will
15 "*generally* not be met if there is another employee employed at the work site.") (emphasis
16 supplied). If the other factors listed above weighed against the feasibility of an employee taking
17 an off-duty meal period, the presence of another employee at the work site would likely be
18 insufficient to rule out an on-duty meal period -- especially in a high-security work environment
19 such as Plaintiff's. Plaintiff can only speculate that its employees would not agree to waive the
20 off-duty meal period requirement. With regard to rest periods, Plaintiff may apply for an
21 exemption from the DLSE. "If, in the opinion of the [DLSE] after due investigation, it is found
22 that enforcement of any provision contained in ... Section 12, Rest Periods ... would not
23 materially affect the welfare or comfort of employees and would work an undue hardship on the
24 employer, exemption may be made at the discretion of the [DLSE]." *Pl.'s Appendix of Selected*
25 *Statutes* Ex. 12 (DLSE opinion letter). Thus, it is possible for Plaintiff to comply with the
26 Regulations without altering its operations to the drastic extent projected throughout the Daniels
27 Declaration.
28

9

04CV0602

Exhibit 2

1    Even if Plaintiff were required to alter its routes and shift lengths to accommodate the

2    Regulations' meal and rest period requirements, the Court concludes that the resulting effect on

3    Plaintiff's operations does not closely relate to Plaintiff's prices, routes or services as

4    contemplated in the ICCTA. In *Mendonca*, the Ninth Circuit found that the Act's purpose was

5    to deregulate motor carriers' intrastate prices, routes and services to bring motor carriers in line

6    with the previously federally deregulated air carriers, which had "gained a sizable advantage

7    over their more regulated, ground-based shipping competitors." *Mendonca*, 152 F.3d at 1187.

8    As in the instant case, the plaintiffs in that case argued that the state law directly affected, and

9    was therefore "related to," their prices, routes and services because compliance with the state

10    law would require the plaintiffs to increase their operating costs and make significant changes to

11    their routes. *Id.* at 1189. The Ninth Circuit ruled that the state law's effect on the plaintiffs'

12    business operations was indirect, remote and tenuous. *Id.* Because Plaintiff's arguments are not

13    materially different from those in *Mendonca*, the Court concludes that *Mendonca* forecloses

14    Plaintiff's preemption argument. As in *Mendonca*, it is possible for Plaintiff to comply with the

15    Regulations by seeking employee waivers and a DLSE exemption and paying the premium, and

16    the resulting increase in operating cost does not directly interfere with Plaintiff's prices, routes

17    or services. Plaintiff's alternative -- changing routes and shift lengths and thereby increasing its

18    operating costs -- does not acutely interfere with the forces of competition between air and motor

19    carriers, which was Congress's focus in enacting the ICCTA. Further, the Court finds that the

20    Regulations do not fall within the field of laws intended to regulate prices, routes and services.

21    Rather, the Regulations are directed at employee health and welfare. Plaintiff's preemption

22    argument fails.

23    **C.   *Supremacy Clause***

24    Plaintiff alternatively argues that the Supremacy Clause prevents Defendants from

25    enforcing the Regulations against Plaintiff. The Supremacy Clause of the Constitution provides

26    that the laws of the United States "shall be the supreme Law of the Land[.]" U.S. Const. art. VI.

27    Applying this provision in the federal preemption context, the Ninth Circuit has identified three

28    instances in which federal law preempts state law: (1) express preemption, where Congress

Exhibit 2

1   explicitly defines the extent to which its enactments preempt state law, (2) field preemption,

2   where state law attempts to regulate conduct in a field that Congress intended the federal law to

3   occupy exclusively, and (3) conflict preemption, where it is impossible to comply with both state

4   and federal requirements, or where state law stands as an obstacle to the accomplishment and

5   execution of the full purposes and objectives of Congress. *See Topa Equities, Ltd. v. City of Los*

6   *Angeles*, 342 F.3d 1065, 1069 (9th Cir. 2003).

7        Plaintiff argues that the Regulations directly conflict with USDOT regulations for motor

8   carriers. The USDOT regulations for drivers' hours of service set the maximum on-duty time

9   per day as fourteen hours, and provide that any meal or rest break of less than two hours must be

10  treated as on-duty time. Plaintiff contends that California's regulations disrupt the federal

11  regulatory scheme by mandating off-duty meal and rest periods. However, the Court finds that

12  the Regulations do not directly conflict with the USDOT hours of service regulations. Plaintiff

13  and other applicable motor carriers may comply with the Regulations by affording their

14  employees off-duty meal and rest periods, and simultaneously comply with the USDOT

15  regulations by counting the off-duty time as on-duty time for purposes of total hours worked per

16  day. Doing so may require Plaintiff to adjust its routes, shift lengths and operating costs, but

17  there remains no direct conflict between the state and federal regulations in question.

18       **D.   *Commerce Clause***

19       The parties agree that the Regulations are nondiscriminatory for purposes of the

20  Commerce Clause; that is, the Regulations apply universally to interstate and intrastate

21  commerce and do not discriminate against out-of-state interests. *See Kleenwell Biohazard Waste*

22  *& Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 395 (9th Cir. 1995). Generally,

23  Commerce Clause claims are brought against a state law or regulation. "In order to establish a

24  claim under the so-called dormant Commerce Clause, [Defendants] must show that the state law

25  or regulation in question penalizes interstate commerce, and does so without sufficient economic

26  justification." *National Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 857 (9th Cir.), *amended on*

27  *denial of reh'g en banc*, 312 F.3d 416 (2002) (alteration in original); *see also Pike v. Bruce*

28  *Church, Inc.*, 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly to

04CV0602

Exhibit 2

1  effectuate a legitimate local public interest, and its effects on interstate commerce are only
2  incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in
3  relation to the putative local benefits.").

4          It is undisputed that the Regulations advance a legitimate local public interest. Plaintiff
5  concedes that ensuring employees' health and safety is a traditional state concern. *Pl.'s Opp'n* at
6  10. Plaintiff argues, however, that the Regulations will force Plaintiff "either to make
7  substantial (and dangerous) changes to its standard, national way of doing business, or to
8  completely exit the State of California." *Id.* at 9. Here, Plaintiff has several options available to
9  it for complying with the Regulations. Depending on which course Plaintiff chooses, its
10 business operations may either be minimally or greatly affected. Plaintiff's Commerce Clause
11 argument is based upon Plaintiff's questionable assumption that compliance with the
12 Regulations will substantially and injuriously affect Plaintiff's business. However, Plaintiff has
13 not shown that the Regulations impose a burden which clearly outweighs the benefit to local
14 workers. The Court concludes that the Regulations' effect on Plaintiff's business is no more
15 than an incidental burden on interstate commerce. "[I]ncidental burdens on interstate commerce
16 may be unavoidable when a State legislates to safeguard the health and safety of its people."
17 *Kleenwell*, 48 F.3d at 399.

18                              *Conclusion and Order*

19          For the foregoing reasons, the Court concludes that Plaintiff fails to state a claim upon
20 which relief may be granted. Accordingly, the Court **GRANTS** Defendants' motions to dismiss
21 and **DENIES** Plaintiff's motion for a preliminary injunction.

22          **IT IS SO ORDERED.**

23

24 Dated: 7/8/04

25                                         WILLIAM Q. HAYES
                                          United States District Judge
26 cc: Magistrate Judge McCurine
        All Counsel of Record
27

28

K:\COS\04CV0602\Hayes\Kleenwell\Dismiss Amended\dpl.wpd                    12                    04CV0602

---

**Exhibit 2**

**EXHIBIT B**



California Secretary of State Debra Bov

**Secretary of State**

Administration    Elections    **Business Programs**    Political Reform    Archives

**Business Entities (BE)**

Online Services
- E-File Statements of Information for Corporations
- Business Search
- Processing Times
- Disclosure Search

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Statements of Information (annual/biennial reports)

Filing Tips

**Information Requests** (certificates, copies & status reports)

Service of Process

FAQs

Contact Information

Resources
- Business Resources
- Tax Information
- Starting A Business

Customer Alerts
- Business Identity Theft
- Misleading Business Solicitations

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, February 22, 2013. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| **Entity Name:** | DEAN FOODS OF SOUTHERN CALIFORNIA, LLC |
| **Entity Number:** | 200911910241 |
| **Date Filed:** | 04/27/2009 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | DELAWARE |
| **Entity Address:** | 2711 N HASKELL AVE STE 3400 |
| **Entity City, State, Zip:** | DALLAS TX 75204 |
| **Agent for Service of Process:** | C T CORPORATION SYSTEM (C0168406) |
| **Agent Address:** | * |
| **Agent City, State, Zip:** | * |

* Indicates the information is not contained in the California Secretary of State's database.

**\* Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**    **New Search**    **Printer Friendly**    **Back to Search Results**

**Privacy Statement** | **Free Document Readers**
Copyright © 2013   California Secretary of State

2/25/13 11:22 AM

EXHIBIT - C, PAGE 1
PAGE 62

**EXHIBIT C**

**Subject: Parker v. DTI, et al.**
**Date:** Wednesday, May 29, 2013 2:30 PM
**From:** Natasha Chesler <nchesler@tbmlaw.net>
**To:** Amanda Bonn <abonn@SusmanGodfrey.com>
**Cc:** Tim McCaffrey <tmccaffrey@tbmlaw.net>, "Steven G. Sklaver" <ssklaver@SusmanGodfrey.com>, Frances Lewis <FLewis@susmangodfrey.com>, "Alisha R. Chandler" <achandler@susmangodfrey.com>

Amanda,

We are going to be filing a first amended complaint that addresses the issues raised by Defendants' motions to dismiss/strike.  The one issue we are not comfortable with currently is the addition of Alta-Dena as a defendant in this case, particularly given your firm's representation that Alta-Dena had nothing to do with Mr. Parker.  Nor have Defendants provided the actual merger agreement.  Please immediately provide us with any evidence that Alta-Dena has any liability with respect to this case.  Specifically, we need:
(a) the merger agreement between Dean Foods of Southern California, LLC and Alta-Dena; and
(b) the transactional documents regarding the transfer of the drivers from Dean Foods of Southern California, LLC to DTI effective January 1, 2011.   Please let me know if you have any questions.  Thank you.

- Natasha

Natasha R. Chesler
The Law Offices of Timothy B. McCaffrey, Jr.
11377 West Olympic Boulevard
Suite 500
Los Angeles, California 90064-1683
Phone:  (310) 882-6407
Facsimile:  (310) 882-6359
Web:  www.tbmlaw.net

The information contained in this communication is protected by the attorney-client and/or the attorney work-product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to nchesler@tbmlaw.net, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT D**

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard
Suite 500
Los Angeles, California  90064-1683
Telephone  (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

February 1, 2013

**VIA CERTIFIED MAIL**

Mr. Marty Morgenstern
Secretary
California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:     *Notice Under California Labor Code § 2699.3(a)(1)*
        *Labor Code Private Attorneys General Act*

Employer:     Alta Dena Certified Transportation, LLC / Dean Transportation, Inc.

Dear Mr. Morgenstern:

This letter is notice under California Labor Code § 2699.3(a)(1) that our clients, Miguel de la Cueva and Scott Parker, allege that their former employer(s), Alta Dena Certified Transportation, LLC / Dean Transportation, Inc., referred to below as "Alta Dena", has violated provisions of the California Labor Code.  While we believe that this is part and parcel of a pending action pending in United States District Court for the Central District of California, Case No. CV 12-1804 GHK (CWx) and are in the process of asking the Court to allow us to proceed in that case on the below identified issues, we provide this notice to ensure that we are properly following the requirements of Section 2699.3 and so that we may be able to recover civil penalties on these theories on behalf the aggrieved employees and the State of California.[1]

---

[1] Mr. de la Cueva previously notified the LWDA on or about December 12, 2011 of Alta Dena's failure to provide, authorize, or permit duty free meal and rest breaks in violation of California Labor Code §§ 226.7 and 512.  The LWDA declined to investigate the charges and he filed suit on behalf of himself and similarly situated aggrieved employees in March 2012.

Mr. Morgenstern
February 1, 2013
Page 2

Mr. de la Cueva and Mr. Parker were employed by Alta Dena as delivery drivers at its facility located at 17637 E. Valley Road, City of Industry, CA 91744. Specifically, Alta Dena has violated the following California Labor Code provisions, and continues to violate them, at its locations in the state of California, with respect to Mr. de la Cueva, Mr. Parker, and all other drivers it employs (or has employed) as set forth below:

(1) California Labor Code § 201-204 – Alta Dena has a policy and/or practice of automatically deducting 30 minutes of compensation from its drivers' earned compensation if they worked more than their scheduled shift, regardless of whether a meal break was actually taken. This necessarily results in Alta Dena paying less than all wages earned and owed in a timely manner.

(2) California Labor Code §§ 221, 223, 224, 510, and 511 – Alta Dena violated these sections by automatically deducting 30 minutes of pay each day from each driver if they worked more than their minimum shift. Alta Dena did not have any authorization for making such deductions nor did it have any legitimate basis to do so given that drivers did not actually always take a 30 minute duty free meal break. Furthermore, Alta Dena was and is aware that its drivers routinely log a 30 minute break even though they do not actually take a 30 minute break (*i.e.*, the drivers are never truly duty free and in any event rarely log a break within the first six hours of their shift). In addition, Alta Dena did not disclose this unlawful practice in any manner reasonably calculated to inform the aggrieved employees of its practice. Nor do the paystubs that Alta Dena provided to Mr. de la Cueva, Mr. Parker, and other drivers indicate that the company has deducted automatically 30 minutes of compensation. Alta Dena's unlawful policy and practice necessarily resulted in lost earned wages, whether straight time or overtime compensation due under California Labor Code §§ 510 or 511.

(3) California Labor Code § 1182.12 – by deducting 30 minutes automatically when drivers were actually working during that time, Alta Dena thereby failed to pay at least the current minimum wage for all hours worked.

Please advise within the required time period whether or not the LWDA intends to investigate these violations. If no such notice is provided within 33 calendar days of the postmark date of this letter, our clients may proceed with a civil action for penalties pursuant to Labor Code § 2699.

Sincerely,

*Natasha Chesler*

Natasha Chesler

Mr. Morgenstern
February 1, 2013
Page 3

cc by Certified Mail:

| | |
|---|---|
| Alta Dena Certified Dairy LLC<br>17637 E. Valley Road<br>City of Industry, CA  91744 | Dean Transportation, Inc.<br>2515 McKinney Avenue, Suite 1200<br>Dallas, TX  75201 |
| Amanda Bonn<br>Susman Godfrey LLP<br>1901 Ave. of the Stars, Suite 950<br>Los Angeles, CA 90067<br>*Attorneys for Alta Dena Certified Dairy LLC* | |

The Law Offices of

# Timothy B. McCaffrey, Jr.

*A Professional Corporation*

11377 West Olympic Boulevard
Suite 500
Los Angeles, California  90064-1683
Telephone (310) 882-6407
Facsimile  (310) 882-6359
nchesler@tbmlaw.net

February 25, 2013

**VIA CERTIFIED MAIL**

Mr. Marty Morgenstern
Secretary
California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:   *Notice Under California Labor Code § 2699.3(a)(1)*
      *Labor Code Private Attorneys General Act*

Employer:   Dean Transportation, Inc., Dean Foods of Southern California, LLC (aka
"Heartland Farms," and SBM Dairies, Inc. (formerly known as Santee Dairies)

Dear Mr. Morgenstern:

This letter is notice under California Labor Code § 2699.3(a)(1) that our client, Scott Parker,
allege that his former employers, Dean Transportation, Inc. ("DTI"), Dean Foods of Southern
California, LLC (aks "Heartland Farms"), and SBM Dairies, Inc. (formerly known as "Santee
Dairies" (collectively "Defendants") have violated provisions of the California Labor Code.

Mr. Parker was employed by Defendants as a delivery driver at its facility located in the City of
Industry, California.[1]  Specifically, Defendants have violated the following California Labor

---

[1] From approximately at least February 2009 through October 2009, Mr. Parker was employed
by Santee Dairies.  From approximately October 2009 through December 31, 2010, Mr. Parker
was employed by Heartland Farms.  From January 1, 2011 through March 2012, Mr. Parker was
employed by DTI.  While the ownership and/or formal entities employing Mr. Parker changed,
his job duties generally remained consistent as did the applicable policies and practices detailed
herein.  (Mr. Parker previously notified the LWDA on or about February 1, 2013 of DTI's failure
to provide, authorize, or permit duty free meal and rest breaks.)

Mr. Morgenstern
February 25, 2013
Page 2

Code provisions (and applicable IWC Wage Orders), and continues to violate them, at its locations in the state of California, with respect to Mr. Parker and all other drivers they employ (or have employed) as set forth below:

(1) California Labor Code §§ 226.7 and 512 – Defendants have a policy/practice of failing to authorize and/or permit meal and rest breaks because, among other things:

   (a) Defendants require drivers to remain with equipment at all times and remain within a one-half to one-mile radius of the route Defendants assigned, thereby failing to relieve drivers from all duties during meal and/or rest break periods;

   (b) Defendants require drivers to wait until all deliveries are completed before taking a meal break, which often resulted in drivers' having to wait until after the beginning of the sixth hour of work before taking a meal break;

   (c) Defendants assign drivers routes without any allocation for meal/break periods, or assigned times, in such a manner that it is often impracticable for drivers to take meal/rest breaks – if at all – prior to the beginning of the sixth hour worked; and

   (d) Defendants fail to authorize and/or permit a second meal period when drivers work in excess of ten hours (and improperly waive the second meal period for drivers who work in excess of twelve hours when such drivers have not taken a first meal break

(2) California Labor Code §§ 221, 223, 224, 510, and 511 – Defendants violated these sections by automatically deducting 30 minutes of pay each day from each driver if they worked more than their minimum shift. Defendants did not have any authorization for making such deductions nor did it have any legitimate basis to do so given that drivers did not actually always take a 30-minute duty free meal break. Furthermore, Defendants were and are aware that its drivers routinely log a 30-minute break even though they do not actually take the break (*i.e.*, the drivers are never truly duty free and in any event rarely log a break within the first six hours of their shift). In addition, Defendants did not disclose this unlawful practice in any manner reasonably calculated to inform the aggrieved employees of its practice. Nor do the paystubs that Defendants provided to Mr. Parker and other drivers indicate that the company has deducted automatically 30-minutes of compensation. Defendants' unlawful policy and practice necessarily resulted in lost earned wages, whether straight time or overtime compensation due under California Labor Code §§ 510 or 511.

(3) California Labor Code § 1182.12 – by deducting 30-minutes automatically when drivers were actually working during that time, Defendants thereby failed to pay at least the current minimum wage for all hours worked.

Mr. Morgenstern
February 25, 2013
Page 3

(4) California Labor Code § 226(a) – Defendants have failed to furnish accurate itemized wage statements in that, among other things, the statements did not show amounts due under Labor Code § 226.7, nor did it accurately reflect all hours worked because of the 30-minute automatic deduction.

(5) California Labor Code § 201-204 – Defendants have a policy and/or practice of automatically deducting 30-minutes of compensation from its drivers' earned compensation if they worked more than their scheduled shift, regardless of whether a meal break was actually taken. This necessarily results in Defendants paying less than all wages earned and owed in a timely manner. In addition, the failure to appropriately compensation drivers' for meal/rest period(s) also resulted in Defendants paying less than all wages earned and owed in a timely manner.

Please advise within the required time period whether or not the LWDA intends to investigate these violations. If no such notice is provided within 33 calendar days of the postmark date of this letter, our client may proceed with a civil action for penalties pursuant to Labor Code § 2699.

Sincerely,

Natasha Chesler

cc by Certified Mail:

| | |
|---|---|
| Dean Transportation, Inc.<br>c/o Corporation Trust Company<br>(Agent for Service of Process)<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE  19801 | SBM Dairies, Inc.<br>c/o Bruce D. Varner<br>(Agent for Service of Process)<br>3750 University Avenue, Suite 610<br>Riverside, CA  92501 |
| Dean Foods of Southern California, LLC<br>c/o Corporation Trust Company<br>(Agent for Service of Process)<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE  19801 | |